802 F.2d 1524
 Virgil CLINE, Petitioner,
v.
BEATRICE POCAHONTAS COAL COMPANY, Old Republic Insurance
Company, and Director, Office of Workers'
Compensation Programs, United States
Department of Labor, Respondents.
 No. 84-1800.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 16, 1986.
Decided Oct. 14, 1986.
 
 C. Randall Lowe (Yeary, Tate & Lowe P.C., Abingdon, Va., on brief), for petitioner.
 Allen R. Prunty (Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for respondents.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Virgil Cline appeals a ruling by the Benefits Review Board (the Board) reversing a decision by an Administrative Law Judge (ALJ) awarding him black lung benefits. The ALJ invoked the interim presumption of total disability due to pneumoconiosis[1] under 20 C.F.R. Secs. 727.203(a)(1) and (a)(2), and found that the Beatrice Pocahontas Coal Co. (Beatrice) had failed to rebut the presumption[2] pursuant to Sec. 727.203(b)(2). After its motion for reconsideration was denied, Beatrice appealed to the Board, which reversed the ALJ, finding that the presumption had been rebutted as a matter of law. Cline now appeals the decision of the Board. We affirm.
 
 
 2
 Virgil Cline left his job with Beatrice in March 1977, after 28 years in the coal mines, because of a work-related back injury. Cline, who has an eighth-grade education, was 59 years old when he applied for benefits in January 1978. After the Deputy Commissioner of the Department of Labor determined that Cline was eligible for benefits, Beatrice requested a formal hearing, which was held on February 4, 1981.
 
 
 3
 The evidence at the hearing showed that, at the time of his back injury, Cline was certified as a slate motorman, but spent 90% of his time operating a tram. According to Cline's own testimony, he had no difficulty operating the tram, which involved little physical exertion. Cline testified, however, that he experienced shortness of breath in connection with his other duties which included beating and lifting rock. Cline claimed that he had no problems with job performance, never missed work, and frequently worked overtime before he injured his back.
 
 
 4
 The medical evidence included ten X-rays, seven of which were positive for pneumoconiosis; two pulmonary function studies, one of which was qualifying;[3] and two blood gas studies both of which were nonqualifying. On the basis of the X-rays and the qualifying pulmonary function study, the ALJ invoked the presumption of total disability due to pneumoconiosis pursuant to 20 C.F.R. Secs. 727.203(a)(1) and (a)(2).
 
 
 5
 In an effort to rebut the presumption, Beatrice offered the medical report and deposition testimony of Dr. Radha Krishnan, who concluded, based upon a clinical examination, functional testing and an interview with Cline, that Cline had a minimal pulmonary impairment due to industrial bronchitis and was not disabled. Krishnan was the only certified pulmonary specialist to examine Cline, and the only examining physician to assess Cline's pulmonary health and to state an opinion regarding the ultimate issue of disability due to pneumoconiosis. See 20 C.F.R. Sec. 727.201. Dr. John R. Hatfield examined Cline and found pneumoconiosis, hypertension and arteriosclerosis related to coal dust exposure, but rendered no opinion on disability.
 
 
 6
 Krishnan's opinion that Cline is not totally disabled involved consideration of a number of objective medical tests, including a pulmonary function study which Krishnan administered himself, the results of which were qualifying--sufficient to trigger the presumption--under the guidelines established by the regulations. 20 C.F.R. Sec. 727.203(a)(2). Krishnan also considered an earlier pulmonary function study conducted by Dr. Robert A. Abernathy, that yielded normal results. Based upon these and other tests, the physical examination, and the interview with Cline, Krishnan concluded that Cline's pulmonary impairment, if any, is not disabling.
 
 
 7
 The ALJ found Dr. Krishnan's testimony "quite comprehensive" but nevertheless discredited it as "contrary to the objective medical evidence," primarily because Krishnan had relied, in part, upon the results of the qualifying pulmonary function study performed during his examination. According to the ALJ,
 
 
 8
 [w]hile the issue ... has not been directly addressed by the Benefits Review Board, I consider the values set out in Sec. 727.203(a)(2) [relating to pulmonary function studies] as not only a [presumption] "triggering" mechanism, but also as "rough guidelines" for a determination of total disability.
 
 
 9
 Thus, according to the ALJ, " 'total disability' is roughly related to the values set forth in the regulations" and " 'objective medical tests' which meet quality control standards and are, otherwise, credible 'speak for themselves' " so that
 
 
 10
 the particular regulations which are in force at the time, more than the physician's opinion should determine the relationship to total disability. For example, a series of pulmonary function test results showing normal ... values could be tantamount to a medical opinion of lack of total disability. Furthermore, a series of credible ventilatory studies showing values well below the particular guidelines in effect at the time should, generally, take precedence over a medical opinion that, nevertheless, concludes that these low test values are not a true indication of "total disability."
 
 
 11
 We agree with the Board that the ALJ erred, as a matter of law, in discrediting Dr. Krishnan's opinion because he relied, in part, upon a pulmonary function study that yielded qualifying values. The criteria governing invocation of the presumption of total disability do not establish, conclusively, that a claimant is disabled, i.e., the presumption is rebuttable. Thus, even qualifying test results may be relied upon in a medical opinion that conflicts with the very presumption that they invoke, if it is demonstrated that such results fail to establish a totally disabling pulmonary impairment. A medical opinion of no disability which is based in part on a qualifying study cannot be disregarded merely because of the qualifying nature of the study. See Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 427 (4th Cir.1986) (for purposes of rebutting a presumption of total disability due to pneumoconiosis, "all relevant medical evidence must be considered and weighed, including, but not exclusively, nonqualifying X-rays, test results, and opinions, regardless of the section under which the presumption was invoked") (emphasis in original). Although many of the X-rays and one pulmonary function study in this case revealed the existence of an impairment sufficient to trigger the presumption of total disability, the testimony of Dr. Krishnan was uncontroverted that Cline was in fact not disabled.
 
 
 12
 The ALJ also found fault with Krishnan's testimony on the basis of asserted inconsistencies between his original observations of Cline's size (66"' and 200 lbs.) and his deposition testimony ("a tall big man" weighing 218-220 lbs.) and within his report as to whether or not Cline suffered from a pulmonary impairment at all.[4] It is clear, however, that these issues played a minor role, if any, in the ALJ's rejection of Krishnan's opinion, given that the whole of the order denying Beatrice's motion for reconsideration is devoted to a discussion of the probative value of objective medical tests versus the inconsistent opinions of physicians. Thus, he observes that "[t]he primary issue or nexus of ... disagreement concerns the role that is played by the guidelines established under the interim presumption, particularly for pulmonary function tests" and specifically rejects Beatrice's assertion that "the standards contained in the Regulations, at 20 C.F.R. Sec. 727.203(a)(2) are only triggering mechanisms" which aid the claimant in establishing his entitlement to benefits.
 
 
 13
 We must generally defer to the factual findings of the ALJ where those findings conflict with those of the Board, Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189-90 (4th Cir.1985); Wilson v. Benefits Review Board, 748 F.2d 198, 199-200 (4th Cir.1984). Here, however, the ALJ's rejection of Dr. Krishnan's uncontroverted opinion because it relied, in part, on a qualifying pulmonary function test, was, as the Board properly held, error as a matter of law. The decision of the Board must therefore be affirmed.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 20 C.F.R. Sec. 727.203(a) provides, in pertinent part, as follows:
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...;
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in Sec. 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than [certain values specified in the regulation's tables];
 (3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than [certain values specified in the regulation's tables];
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment; ....
 
 
 [2]
 20 C.F.R. Sec. 727.203(b) provides, in pertinent part, as follows:
 (b) Rebuttal of interim presumption. In adjudicating a claim under this sub-part, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ...; or
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 [3]
 For purposes of this opinion, "qualifying" pulmonary function (ventilatory) or blood gas studies refer to those with results that are equal to or less than the regulatory criteria for a finding of pulmonary impairment and the invocation of the interim presumption of total disability due to pneumoconiosis. See 20 C.F.R. Secs. 727.203(a)(2) and (a)(3)
 
 
 [4]
 The Benefits Review Board noted that the disparities between Dr. Krishnan's two descriptions of Cline's height and weight were not substantial and in any case only minimally, if at all, relevant to the overall credibility of Krishnan's medical opinion on the question of disability. With respect to the asserted inconsistencies within Krishnan's report as to whether or not Cline suffers from any respiratory impairment, the Board correctly noted that the existence of a mild impairment is not necessarily inconsistent with a conclusion that the miner is not disabled