894 F.2d 403
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
VIRGINIA CREWS COAL COMPANY, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; John C. Church, Respondents.
 No. 89-2355.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Nov. 22, 1989.
Decided: Jan. 16, 1990.
 
 John P. Scherer, File, Payne, Scherer & Brown, on brief, for petitioner.
 Jerry G. Thorn, Acting Solicitor of Labor; Donald S. Shire, Associate Solicitor for Black Lung Benefits.
 James B. Leonard, Associate Regional Solicitor; Michael J. Denney, Counsel for Appellate Litigation.
 Nicholas J. Levintow, United States Department of Labor; Frederick K. Muth, Hensley, Muth, Garton & Hayes, on brief, for respondents.
 Before ERVIN, Chief Judge, and K.K. HALL and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Virginia Crews Coal Company ("Virginia Crews") petitions for review of the Benefits Review Board's ("BRB") affirmance of the Administrative Law Judge's ("ALJ") decision and order finding that John Church was entitled to black lung benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901 et seq., and that Virginia Crews was the responsible operator. Finding no error, we affirm.
 
 I.
 
 2
 John Church worked as a coal miner for approximately eighteen and one-half years. He last worked for Virginia Crews in 1976. His duties throughout his employment included running a bulldozer, hand loading coal, and working on conveyor chains. Church filed this claim for benefits on March 24, 1980. A formal hearing was held before an ALJ on August 21, 1986.
 
 
 3
 The medical evidence introduced at the hearing included seven x-rays (all read positive for pneumoconiosis), six pulmonary function studies (all qualifying), six blood gas studies (two qualifying, four non-qualifying), and several medical reports.
 
 
 4
 A 1977 report from Dr. Whitly noted Church's increasingly severe problems due to chronic obstructive pulmonary disease. Drs. Tan, Cardona and Modi each diagnosed pneumoconiosis arising out of coal mine employment. Drs. Modi and Cardona found Church to be totally and permanently disabled as a result of pneumoconiosis. Dr. Buddington diagnosed moderate chronic pulmonary disease but was of the opinion that Church might "be able to perform some heavy physical labor for brief periods of time with long periods of rest in between."
 
 
 5
 The remaining medical evidence came from Dr. Daniel and Dr. Piracha. Dr. Daniel diagnosed chronic obstructive pulmonary disease and occupational pneumoconiosis but thought Church was able to perform his usual coal mine duties. Dr. Piracha, in 1981, found no evidence of pneumoconiosis but, in 1986, testified that Church did suffer from simple pneumoconiosis--but with no significant pulmonary insufficiency. Dr. Piracha admitted that the results of the pulmonary function tests showed some obstructive disease, but thought the tests were unreliable. As to Church's capacity to work, Dr. Piracha thought he would be able to run a bulldozer but unable to do "anything that would push him," including heavy lifting.
 
 
 6
 On the basis of this evidence, the ALJ found that the interim presumption of total disability was invoked under 20 C.F.R. Sec. 727.203(a) and that Virginia Crews had failed to establish rebuttal under any subsection of Sec. 727.203(b). The ALJ also found that Virginia Crews was the responsible operator. The BRB affirmed. Virginia Crews appeals.
 
 II.
 
 7
 The coal company's first contention is that the ALJ's decision that the presumption was invoked and not rebutted is not supported by substantial evidence and must be reversed. Specifically, the company contends that rebuttal was established by evidence that Church could do his usual coal mine work. 20 C.F.R. Sec. 727.203(b)(2).
 
 
 8
 When there is conflicting evidence in the record as there is in this case, the ALJ is entitled to draw his own inferences from that evidence and to make credibility determinations. We will affirm the ALJ's findings if there is substantial evidence to support them. Wilson v. Benefits Review Board, 748 F.2d 198 (4th Cir.1984). The company contends that the ALJ erred in relying on the opinions of Drs. Modi and Cardona instead of the opinions of Drs. Daniel and Piracha. We cannot agree. Although Dr. Piracha testified that he thought Church could return to his usual work as a dozer operator, Church testified that his work involved heavy lifting, bending, and carrying, and Dr. Piracha admitted that Church was unable to perform these activities. Further, although Dr. Daniel thought Church capable of doing his usual mine job, as the ALJ noted, Dr. Daniel did not appear to know exactly what Church's job involved. For these reasons, we conclude that the evidence falls short of establishing rebuttal and that substantial evidence supports the ALJ's award of benefits.
 
 III.
 
 9
 Virginia Crews' second contention is that the ALJ erred in finding it to be the responsible operator. The company argues, as it did below, that Iaeger Pocahontas Coal Company ("Iaeger") is the proper responsible operator. We find this contention without merit.
 
 
 10
 After he quit working for Virginia Crews in 1976, Church worked for Iaeger for approximately two years. He testified that he operated an end loader in connection with Iaeger's non-coal mine site preparation and did odd jobs on Iaeger property. Tom Church, Iaeger's owner and Church's brother, testified that when Church went to work for Iaeger in 1976, he performed carpentry and operated some heavy equipment, but these duties were exclusively in connection with Iaeger's operation of an apartment building, a motel and a car wash. The only evidence that Church was engaged in coal mine work for Iaeger was his statement on his application for benefits that his last coal mine employment was in 1978, and an isolated statement by Church to Dr. Cardona that he stopped coal mining in 1978.
 
 
 11
 The record indicates that Iaeger sold its coal mining operation to Virginia Crews on November 19, 1974. Although Iaeger continued to haul some coal for Virginia Crews after the sale, Church never drove any of Iaeger's coal trucks and Iaeger was completely out of the coal hauling business in 1976.
 
 
 12
 In order for an employer to be considered a responsible operator in any particular case, the "miner's disability" must have arisen "at least in part out of employment in or around a mine or other facility during a period when the mine or facility was operated by such operator...." 20 C.F.R. Sec. 725.492(a)(1). A "miner" is defined as "any person who works or has worked in or around a coal mine or coal preparation facility in the extraction, preparation, or transportation of coal...." 20 C.F.R. Sec. 725.202(a).
 
 
 13
 In this case substantial evidence supports the ALJ's finding that Virginia Crews is the responsible operator. The only evidence that Church worked as a coal miner for Iaeger were his own statements. He testified that he made an error on his application and the evidence showed that Iaeger was completely out of the coal mining business in 1976. These facts support the ALJ's finding that Virginia Crews is the responsible operator.
 
 
 14
 Accordingly, the order of the Benefits Review Board is affirmed.
 
 
 15
 AFFIRMED.