**James K. WILSON, Petitioner,**

v.

**BENEFITS REVIEW BOARD; Director, Office of Workers' Compensation Programs, United States Department of Labor and Valley Camp Coal Company, Respondents.**

**No. 84–1110.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 27, 1984.

Decided Nov. 5, 1984.

---

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.

SPROUSE, Circuit Judge:

James K. Wilson, a coal miner, appeals from a decision of the Benefits Review Board denying his claim for black lung disability payments under 30 U.S.C. §§ 901–45 (1982) (the Black Lung Act). We reverse and direct an award of benefits.

I

The Department of Labor initially ruled on August 1, 1979, finding that Wilson was eligible for benefits and that Valley Camp Coal Company was the responsible employer. At Valley Camp's request, the claim was referred to the Office of Administrative Law Judges for a formal hearing. The ALJ conducted a hearing and issued his decision on October 10, 1980 finding Wilson eligible for black lung benefits commencing April 1, 1978. Valley Camp appealed to the Benefits Review Board, which reversed the award of benefits on November 30, 1983. The Board held that the medical evidence in the record established "as a matter of law" that Wilson suffered from no disabling respiratory impairment and was able to do his usual coal mine work. 20 C.F.R. § 727.-203(b)(2) (1984).

The issues on this appeal are whether there was substantial evidence to support the ALJ's decision and whether the Board reviewed the ALJ's decision under the proper standard. *Beavan v. Bethlehem Mines Corp.*, 741 F.2d 689 (4th Cir.1984); *Amigo Smokeless Coal Co. v. Director, OWCP*, 642 F.2d 68 (4th Cir.1981); *see also Sun Shipbuilding & Drydock Co. v. McCabe*, 593 F.2d 234, 237 (3rd Cir.1979). The standard for Board review is set forth in the Longshoremen's and Harbor Workers' Compensation Act:[1] "findings of fact in the decision under review by the Board

H. John Taylor, Rand, W. Va., for petitioner.

Jennifer L. Sargus, Wheeling, W. Va. (Recht & Johnson, Wheeling, W. Va., on brief) and Jeffrey Bernstein, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., for respondents.

1. Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901 *et seq.* (1982).

shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). This provision of the LHWCA is incorporated into the Black Lung Act by 30 U.S.C. § 932(a). The ultimate issue thus is whether there was substantial evidence to support the ALJ's decision. *See* 20 C.F.R. § 802.301 (1984).[2]

The evidence principally consists of testimony describing three medical examinations of Wilson. The first was conducted on July 19, 1975 by Dr. Ralph J. Jones in connection with Wilson's claim for State of West Virginia Occupational Pneumoconiosis benefits. Dr. Jones diagnosed pneumoconiosis "with no impairment for work therefrom," but he stated that Wilson had not been given an exercise tolerance test because of a severe back condition.

Wilson was next examined by Dr. Willard Pushkin on July 5, 1979, at the request of the United States Department of Labor. A chest x-ray and pulmonary function studies were performed. Dr. Pushkin concluded that Wilson suffered from pneumoconiosis causally related to coal mine employment with "minimal impairment." Dr. Pushkin also assessed Wilson's effort during the pulmonary function study tests as "submaximal," but did not explain the reasons for this conclusion. The chest x-ray performed on July 5, 1979 was first read by Dr. James T. Smith who found "fine bilateral nodulation consistant [sic] with occupational pneumoconiosis" and concluded that Wilson indeed suffered from pneumoconiosis, category 1/2 p. This x-ray was re-read on July 27, 1979 by Dr. Jeremy Attman

who deemed the film "completely negative."

Wilson was then examined on September 12, 1979 by Dr. Anthony C. Daugherty at the request of the Valley Camp Coal Company. The results of the pulmonary function studies and arterial blood gas tests conducted at the direction of Dr. Daugherty were not equal to or less than the regulatory criteria of 20 C.F.R. § 727.203.[3]

An x-ray ordered by Dr. Daugherty was performed and read by Dr. Jose Caringel. According to Dr. Caringel, this x-ray revealed "fine fibronodular densities in the right mid lung field and in the bases." Dr. Daugherty interpreted the pulmonary function studies as indicating a "mild amount of obstructive changes." He also stated that the arterial blood gas studies revealed "mild hypoxemia." After reviewing Dr. Caringel's x-ray report describing fibronodular densities, Dr. Daugherty stated that he could not "appreciate this pattern," mistakenly attributing those markings to Wilson's "chronic cigarette smoking." The record, however, shows that Wilson is a lifetime non-smoker. Dr. Daugherty concluded that Wilson was capable of "engaging in gainful employment with respect to his lungs."

## II

The ALJ invoked a rebuttable presumption of total disability due to pneumoconiosis arising out of coal mine employment on the basis of x-ray evidence establishing the presence of the disease. 20 C.F.R. § 727.203(a)(1).[4] He relied on the two x-rays

---

**2.** 20 C.F.R. § 802.301, entitled "Scope of Review," states:

The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.

**3.** Dr. Daugherty's report states that Wilson's height was 71 inches. An MVV value of 137.5

liters per minute was obtained. To be probative of a disability, the MVV value for a miner of this height must be equal to or less than 104 liters per minute. 20 C.F.R. § 727.203. The report also indicates that Wilson's FEV1 was greater than that called for by 20 C.F.R. § 727.203.

**4.** Regulations implementing the Black Lung Benefits Act, as amended, 30 U.S.C. § 901 *et seq.,* provide that a claimant with at least 10 years of coal mine employment is totally disabled due to pneumoconiosis if one of the following medical requirements is met: a chest x-ray establishes the presence of pneumoconiosis, 20 C.F.R. § 727.203(a)(1); pulmonary or

taken at the request of Drs. Pushkin and Daugherty. He rejected Valley Camp's contention that the ventilatory and blood gas studies revealed that Wilson did not have pneumoconiosis and thus rebutted the presumption. Additionally, he found that Dr. Daugherty's recognition of a mild amount of distinctive changes was consistent with a finding of pneumoconiosis, emphasizing the erroneous statement that Wilson was a chronic smoker.

Valley Camp argued before the Board and here that the results of the blood gas studies and ventilatory function tests rebut the presumption of total disability pursuant to 20 C.F.R. § 727.203(b)(2). That section provides that the presumption of total disability due to pneumoconiosis can be rebutted by medical evidence demonstrating that the claimant is still capable of working in the mines. *Director, OWCP v. Beatrice Pocahontas Co.,* 698 F.2d 680, 682 (4th Cir.1983). The Benefits Review Board reversed the award of benefits, holding that the medical evidence established as a matter of law that Wilson was capable of doing his usual coal mine employment. 20 C.F.R. § 727.203(b)(2). The Board based its decision on the reports of Drs. Jones and Daugherty, and considered the blood gas studies and ventilatory function tests. The Board further found that the findings of Dr. Pushkin did not constitute a contrary medical judgment from which the administrative law judge could rationally arrive at a different result.

■ We agree with the ALJ that the readings of the x-rays by Dr. Smith and Dr. Caringel were sufficient to establish a presumption of total disability. 20 C.F.R. § 727.203(a)(1). Once the interim presumption is established by a qualifying diagnosis from *either* x-rays, blood gas studies, or ventilatory function tests, "a miner's failure to satisfy the remaining tests [for a qualifying diagnosis] does not rebut [it]." *Hampton v. United States Dept. of Labor*

*Benefits Review Board,* 678 F.2d 506, 508 (4th Cir.1982). *See also Whicker v. United States Dept. of Labor Benefits Review Board,* 733 F.2d 346 (4th Cir.1984) (specifically applying the *Hampton* holding to rebuttal under 20 C.F.R. § 727.201(b)(2)).

■ There was substantial evidence to support the ALJ's decision and the Board erred in reaching a contrary conclusion. Dr. Jones, who conducted an examination of Wilson nearly two years before Wilson filed his application with the Department of Labor, diagnosed pneumoconiosis although he felt there was "no impairment for work therefrom." His report fails to support Valley Camp's position. The test was incomplete in that no exercise tolerance test, pulmonary function studies, or arterial blood gas studies were administered. To the extent that the examination was valid, it supported a finding of pneumoconiosis. Dr. Jones' conclusory statement that there was no impairment for work is insufficient to satisfy the specific regulatory requirement that the claimant be "able to do his usual coal mine work or comparable and gainful work."

Dr. Daugherty's report, concluding that Wilson was "capable at this point of engaging in gainful employment with respect to his lungs," suffers from a similar deficiency. Such general statements have little probative value in arriving at the specific determinations mandated by the statute.

In contrast to these reports are the findings of Drs. Pushkin, Smith, and Caringel. Dr. Pushkin stated unequivocally that Wilson suffered from pneumoconiosis causally related to coal mine employment. Dr. Smith, who read the chest x-ray ordered by Dr. Pushkin, concluded that the condition of Wilson's lungs was consistent with occupational pneumoconiosis. The x-ray read by Dr. Caringel also revealed abnormalities consistent with a diagnosis of pneumoconiosis. Dr. Daugherty's rejection of Dr. Caringel's findings on the basis of Wilson's

blood gas studies produce values which are equal to or less than values specified in 20 C.F.R. § 727.203(a)(2) or (3); or other medical evidence, including the documented opinion of

a physician exercising reasoned medical judgment, establishes the presence of totally disabling respiratory or pulmonary impairment, 20 C.F.R. § 727.203(a)(4).

chronic cigarette smoking is patently erroneous in light of the uncontroverted evidence that Wilson had never smoked. Additionally, Dr. Daugherty recognized that Wilson was suffering a "mild amount of obstructive changes" and "mild hypoxemia."

Although Valley Camp adduced some evidence to rebut the presumption of total disability, there is substantial unrebutted evidence to support the decision of the ALJ that Wilson was disabled by pneumoconiosis. Consequently, the Benefits Review Board erred in setting aside his judgment.

The decision of the Benefits Review Board is reversed and it is directed to enter a judgment awarding Wilson benefits.

REVERSED.

Murnaghan, Circuit Judge, filed opinion in which he concurred and dissented.