813 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Hassel CHARLES, Petitioner,
v.
GALE COAL COMPANY, Respondent,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest.
 No. 84-2359.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 15, 1986.
Decided Feb. 2, 1987.
 
 Before RUSSELL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 Gregory R. Herrell, Browning, Morefield & Schelin, on brief, for petitioner.
 Mark E. Solomons, Kilcullen, Wilson, and Kilcullen, on brief, for respondent.
 PER CURIAM:
 
 
 1
 Hassell Charles timely petitioned for review of the order of the Benefits Review Board [BRB, or the Board] affirming the decision of the administrative law judge [ALJ] denying black lung benefits available under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. Secs. 901 et seq., and regulations adopted thereunder. We affirm.
 
 I.
 
 2
 The federal black lung statute was first enacted in 1969 to provide disability benefits to coal miners disabled by pneumoconiosis caused by their coal mine employment. Federal Coal Mine Health & Safety Act of 1969, 30 U.S.C. Secs. 901 et seq. This remedial legislation, as modified by amendments in 1972 (the Black Lung Benefits Act), in 1977 (the Black Lung Benefits Reform Act), and in 1981 (the 1981 Amendments), reflects Congressional concern for the thousands of coal miners who suffer from disabling lung disease resulting from their work in the coal mines. 30 U.S.C. Sec. 901(a). See generally Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 6-12 (1976).
 
 
 3
 In recognition of the degenerative and progressive nature of pneumoconiosis, Congress established several presumptions that favor the granting of benefits. Congress designed the presumptions to ensure that difficulties in proving pneumoconiosis by medical evidence not prevent deserving miners from receiving benefits. 30 U.S.C. Sec. 901(c); S.Rep. 92-743, 92nd Cong., 2d Sess., Reprinted in [1972] U.S.Code, Cong. and Admin.News 2305. See Rose v. Clinchfield Coal Co., 614 F.2d 936, 939 (4th Cir.1980).
 
 
 4
 The ALJ found that Mr. Charles qualified for one of the presumptions: the "ten year" or "interim" presumption allowed by 30 U.S.C. Sec. 921(c)(1), 20 C.F.R. Sec. 727.203(a). The interim presumption is a rebuttable presumption of total disability due to pneumoconiosis arising out of coal mine work, and is allowable to claimants who can prove they have worked at least ten years in the nation's coal mining industry (Mr. Charles worked in the mines for 10 years, six months) and can produce at least one of four types of medical evidence tending to show disability. The medical evidence may be: (1) x-rays showing signs of pneumoconiosis, (2) ventilatory studies showing impaired respiratory ability, (3) arterial blood gas studies showing impaired ability to diffuse oxygen through the lungs into the blood system, or (4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishing that the miner suffers from a totally disabling respiratory or pulmonary impairment. 20 C.F.R. Sec. 727.203(a)(1)-(4).
 
 
 5
 This Court has recently construed the operation of the interim presumption. In Stapleton v. Westmoreland Coal Company, 785 F.2d 424 (4th Cir.1986) (en banc), we held that
 
 
 6
 the interim presumption under Sec. 727.203(a)(1), (2), or (3) is established when there is credible evidence that a qualifying X-ray indicates the presence of pneumoconiosis, a single qualifying set of ventilatory studies indicates, pursuant to the regulatory standard, a chronic respiratory or pulmonary disease, or a single qualifying set of blood gas studies indicates, pursuant to the regulatory standard, an impairment in the transfer of oxygen from the lungs to the blood.
 
 
 7
 785 F.2d at 426. We also held that the interim presumption under 20 C.F.R. Sec. 727.203(a)(4) is established by one qualifying physician's opinion, regardless of the number of negative opinions. 785 F.2d at 426.
 
 
 8
 In the instant case the ALJ found that the interim presumption was allowable to Mr. Charles on the basis of the expert opinion of a treating physician, Dr. J.P. Sutherland, whose opinion was based on a physical examination, clinical studies including pulmonary function studies and laboratory tests, and chest x-ray readings. Although Dr. Sutherland's report did not state precisely that petitioner suffered a "totally disabling respiratory or pulmonary impairment,"[1] the ALJ interpreted his statements as being tantamount to such a conclusion.
 
 
 9
 Accordingly, the ALJ invoked the interim presumption pursuant to 20 C.F.R. Sec. 727.203(a)(4), thus shifting to respondent the burden of rebutting the presumption that petitioner was totally disabled by pneumoconiosis.
 
 
 10
 The interim presumption can be rebutted by showing: that the miner is in fact, doing his usual coal mine work or comparable and gainful work, 20 C.F.R. Sec. 727.203(b)(1); that the miner is able to do his usual coal mine work or comparable and gainful work, 20 C.F.R. Sec. 727.203(b)(2); that the miner's disability did not arise from coal mine employment, 20 C.F.R. Sec. 727.203(b)(3); or that the miner does not have pneumoconiosis, 20 C.F.R. Sec. 727.203(b)(4). In Stapleton this Court ruled that all relevant medical evidence must be considered and weighed on rebuttal of the interim presumption, including non-qualifying x-rays, test results and physician's opinions, regardless of the section under which the presumption was invoked. 785 F.2d at 427; see 20 C.F.R. Sec. 727.203(b). The term "relevant medical evidence" is described in detail by the Act itself:
 
 
 11
 In determining the validity of claims ..., all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits,....
 
 
 12
 30 U.S.C. Sec. 923(b).
 
 
 13
 The weight to be given such evidence is in no way limited, except that "no claim for benefits ... shall be denied solely on the basis of the results of a chest roentgenogram." Id. Yet even this limitation must be read with emphasis on the term "solely" when applied to a coal mine operator. Usery v. Turner Elkhorn Mining Co., 428 U.S. at 32.
 
 
 14
 The record on review discloses that the ALJ carefully reviewed all the relevant medical evidence in considering whether the interim presumption was rebutted, and that evidence clearly supports his conclusion that rebuttal was accomplished under 20 C.F.R. Sec. 727.203(b)(2) (claimant able to perform his usual coal mine work), Sec. 727.203(b)(3) (claimant's disability did not arise from his coal mine employment), and Sec. 727.203(b)(4) (claimant does not have pneumoconiosis).
 
 
 15
 In finding that Mr. Charles was medically able to perform his usual coal mine work, the ALJ accorded greater credibility to the reports and deposition of Dr. Max Jones than to the report of Dr. Robert F. Baxter and Dr. John R. Hatfield. This was proper. Dr. Jones's reports and deposition cogently recount his professional credentials and the tests and studies he performed on Mr. Charles, which included a physical examination, an electrocardiogram, ventilatory studies, and chest x-rays taken and interpreted by Dr. G.N. Combs, a radiologist and Board-certified B-reader.[2] The results of these tests and x-rays were all non-qualifying.[3]
 
 
 16
 In contrast to Dr. Jones's clearly stated and thoroughly documented expert opinion, the expert evidence tending to disprove Mr. Charles's ability to perform his usual coal mine work was at best ambiguous and at worst self-defeating. Dr. John R. Hatfield diagnosed the presence of " 1/2p." pneumoconiosis, which is medically considered as first stage, simple pneumoconiosis.[4] Dr. Hatfield assessed the severity of this impairment as "mild, if any." Conversely, Dr. Robert F. Baxter diagnosed Mr. Charles as suffering "chronic obstructive pulmonary disease with Coal workers' pneumoconiosis," and "involutional melancholia," resulting in total and permanent disability.
 
 
 17
 The ALJ discounted Dr. Baxter's conclusory opinion as being "not a reasoned medical opinion within the meaning of the regulations because he states no basis for this report." The record fully supports the ALJ's treatment of this evidence, which is nothing more than a summary report, actually, a certificate, devoid of any supporting test results or clinical studies.
 
 
 18
 The ALJ also found rebuttal of the interim presumption under 20 C.F.R. Sec. 727.203(b)(3) on the bases that (i) Mr. Charles was then being treated for nervous and involutional melancholia, and (ii) his impairment, if any, was mild and he was still able to do his usual coal mine work. This was harmless, albeit not insignificant, error.
 
 
 19
 Rebuttal under Sec. 727.203(b)(3) comes into play only when "[t]he evidence establishes that the total disability ... did not arise ... out of coal mine employment." Thus, (b)(3) rebuttal is relevant only when it is determined that the miner is totally disabled by a pulmonary or respiratory disease. In other words, inquiry under (b)(3) is directed only to the cause of the miner's respiratory disease, while inquiry under (b)(2) is directed to the degree of disablement.
 
 
 20
 The final method of rebuttal is by proof that the miner does not have pneumoconiosis, under 20 C.F.R. Sec. 727.203(b)(4). Weighing all the relevant medical evidence, the ALJ concluded that the presence of pneumoconiosis simply was not established by the proof.
 
 
 21
 Accordingly, the ALJ found that the interim presumption of total disability due to pneumoconiosis was effectively rebutted, and denied his claim. Mr. Charles timely appealed to the Benefits Review Board.
 
 II.
 
 22
 The BRB's scope of review of the ALJ's decision and order is governed by statute and regulation.
 
 
 23
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 24
 20 C.F.R. Sec. 802.301; 33 U.S.C. Sec. 921(b)(3), incorporated into the Black Lung Act by 30 U.S.C. Secs. 932(a) et seq. Wilson v. Benefits Review Board, 748 F.2d 198, 200 (4th Cir.1984); see also Zbosnik v. Badger Coal Company, 759 F.2d 1187, 1189 (4th Cir.1985). We consider, as did the Board, whether there was substantial evidence to support the decision of the ALJ. Zbosnik, 759 F.2d at 1189-90; see also Eplion v. Director, Office of Workers' Compensation Programs, 794 F.2d 935 (4th Cir.1986).
 
 
 25
 A fair review of the ALJ's decision and order rejecting Mr. Charles's claim discloses that the ALJ thoroughly and exhaustively considered all the relevant medical evidence pertaining to this case. He assiduously compared the objective medical data to the statutory and regulatory standards governing proof of pneumoconiosis, and found petitioner's proof lacking.
 
 
 26
 On this review petitioner fails effectively to deal with or even consider the medical evidence and reports of physicians denying the presence of pneumoconiosis. He urges that the ALJ's reliance on non-qualifying tests results "to undo a presumption legitimately invoked" is reversible error under Hampton v. United States Department of Labor Benefits Review Board, 678 F.2d 506 (4th Cir.1982), and Whicker v. United States Department of Labor Benefits Review Board, 733 F.2d 346 (4th Cir.1984). In Stapleton v. Westmoreland Coal Company, supra, we expressly overruled Hampton and Whicker, and held, among other things, that evidence (including medical opinions) based exclusively or primarily on non-qualifying test results may be used as the principal means of rebutting an interim presumption of pneumoconiosis.
 
 
 27
 We expressly invited petitioner to address the impact of Stapleton on his petition for review now under consideration; petitioner made no response.
 
 
 28
 Petitioner failed to counter the rebuttal to his presumption that he was totally disabled due to the presence of pneumoconiosis.
 
 
 29
 We conclude that the ALJ's findings and conclusions are amply supported by substantial evidence appearing in the record, and that there is a reasonable factual and legal basis for the Board's affirming the ALJ's decision and order. Accordingly, we affirm the order of the Benefits Review Board. We find that the facts and legal argument are adequately presented in the parties' briefs and the record on review, that the dispositive issue has been recently decided authoritatively, and that the decisional process would not be significantly aided by oral argument. Consequently, we dispense with oral argument pursuant to Fed.R.App.P. 34(a) and Local Rule 34(a).
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 Dr. Sutherland submitted two letter reports to Charles's attorney, which were received as evidence before the ALJ. The first report, dated 18 December 1980, is a pre-printed form with blank lines on which Dr. Sutherland penned-in pertinent information. This report stated, in material part, as follows:
 I have been treating [Hassell Charles] for his respiratory problems since 4-10-75.
 My diagnosis on his respiratory condition is:
 Chronic Obst. Lung Disease pneumoconiosis--UICC Category 1/2p--emphysema
 ....
 It is my considered medical opinion that the above patient's respiratory impairment prevents him from working in coal mining employment or comparable employment where he would be exposed to a dustry [sic] enviroment [sic].
 Dr. Sutherland's 21 April 1981 letter report is, essentially, a near-verbatim reiteration of the December 1980 report, but adds a brief listing of the methodology used in arriving at his opinion.
 
 
 [2]
 The National Institute of Occupational Safety and Health certifies physicians to interpret x-rays for the presence of certain lung abnormalities upon their passing a series of written and practical examinations testing their expertise
 
 
 [3]
 I.e. the results were insufficient to trigger the interim presumption; see 20 C.F.R. Sec. 727.203(a)
 
 
 [4]
 See, e.g., 4A R. Gray & L. Gordy, Attorneys' Textbook of Medicine p 205B.21(4) (3d ed. 1986)