849 F.2d 604
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carl DALTON; Helen Dalton, on her own behalf and as
successor in interest to Carl C. Dalton, deceased,
Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 87-3809.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 26, 1988.
Decided: June 3, 1988.
 
 Helen Dalton, petitioner pro se.
 James Michael O'Neill, Brian Earl Peters, Thomas L. Holzman (United States Department of Labor), for respondent.
 Before K.K. HALL, SPROUSE and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Carl C. Dalton, proceeding pro se, applied for disability benefits provided under the Black Lung Benefits Act, as amended, 30 U.S.C. Secs. 901-945 [the Act]. The application was heard by an administrative law judge [ALJ] in 1984, who found (i) that Dalton was still capable of performing his usual coal mine work or comparable, gainful employment, and (ii) that Dalton's disabilities did not arise in whole or in part out of his coal mine employment. Accordingly, the ALJ concluded that Dalton was not entitled to benefits under the Act and denied his application. Dalton appealed[1] the ALJ's decision and order to the Benefits Review Board [BRB, or the Board]. The BRB affirmed the ALJ's denial of benefits, but solely on the basis that Dalton was, from a pulmonary consideration, still capable of performing his usual coal mine work or comparable, gainful employment; the BRB deemed it unnecessary to consider whether Dalton's disabilities did not arise in whole or in part out of his coal mine employment. We find reversible error in the BRB's decision and order and, accordingly, reverse and remand to the Benefits Review Board with instructions. We also find that the facts and legal arguments are adequately presented in the parties' briefs and that the decisional process would not be significantly aided by oral argument; consequently, we dispense with oral argument pursuant to Fed.R.App.P. 34(a) and Loc.R. 34(a).
 
 
 2
 * Black Lung disability benefits are allowable to a miner if (i) he is totally disabled, (ii) the disability was caused, at least partially, by pneumoconiosis[2] and (iii) the disability arose out of coal mine employment. All three of these conditions are presumed if the miner was engaged in coal mine employment for at least ten years and meets one of four medical requirements: (1) a chest X-ray establishes the presence of pneumoconiosis; (2) ventilatory studies establish the presence of a respiratory or pulmonary disease--not necessarily pneumoconiosis--of a specified severity; (3) blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishes the presence of a totally disabling respiratory impairment. 20 C.F.R. Sec. 727.203 (1987); see Mullins Coal Co., Inc. v. Director, Officer of Workers' Compensation Programs, 56 U.S.L.W. 4044, 4045 (U.S. Dec. 14, 1987) (No. 86-327).
 
 
 3
 The medical evidence adduced at the hearing before the ALJ included
 
 
 4
 . A series of chest X-rays taken between 1974 and 1980. Two of the X-rays were initially interpreted as positive for presence of pneumoconiosis; however, they were reread as negative by certified "B" readers.[3] The others either were initially interpreted as negative for the presence of pneumoconiosis, or as inconclusive.
 
 
 5
 . Three ventilatory studies, each of which produced non-qualifying results.[4]
 
 
 6
 . An arterial blood-gas study which provided qualifying results.
 
 
 7
 . Dr. Gerald F. Schwartzberg's 1973 report of a physical examination he made of Carl Dalton. Dr. Schwartzberg's professional opinion, based on the examination he conducted and on pulmonary function studies and chest X-rays, was that Dalton had "no objective findings of pulmonary disease" and that he could not "make the diagnosis of pneumoconiosis."
 
 
 8
 . Dr. Bernard E. Levin's July 1987 report of a physical examination diagnosing Dalton as suffering "mild chronic bronchitis" and "essential hypertension."
 
 
 9
 . Dr. Murl E. Fulk's March 1973 report of examination and November 1974 letter concluding that Dalton had pneumoconiosis and was permanently disabled. Dr. Fulk's letter recited that he had been Dalton's physician for 13 years; however, his letter and report were wholly conclusory and were premised on subjective symptoms Dalton stated to the physician, rather than on objective criteria, such as test results and X-rays.
 
 
 10
 Based upon the qualifying arterial blood-gas study, the ALJ accorded Dalton the evidentiary benefit of the regulatory presumption of total disability due to pneumoconiosis arising from his ten years' employment in the coal mines.[5] However, the ALJ found and concluded that the regulatory presumption was rebutted under 20 C.F.R. Sec. 727.203(b)(2) and (b)(3) and that Dalton therefore was not entitled to disability benefits; the BRB affirmed solely on the basis of rebuttal under Sec. .203(b)(2).
 
 II
 
 11
 The Benefits Review Board's scope of review of administrative law judges' decisions and orders is governed by statute and regulation:
 
 
 12
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 13
 20 C.F.R. Sec. 802.301 (1987); 33 U.S.C. Sec. 921(b)(3), incorporated into the Act by 30 U.S.C. Sec. 932(a). Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189-90 (4th Cir.1985); Wilson v. Benefits Review Board, 748 F.2d 198, 199-200 (4th Cir.1984). On appeal we consider, as did the Board, whether there was substantial evidence to support the ALJ's decision and order. See Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs, 642 F.2d 68, 69 (4th Cir.1981); see also Zbosnik, 759 F.2d at 1189-90, and Eplion v. Director, Office of Workers' Compensation Programs, 794 F.2d 935, 936 (4th Cir.1986).
 
 
 14
 The regulations governing benefits for black lung disease set out a reasonably straightforward, analytical process that was not adhered to in this case. Dalton established by the qualifying arterial blood-gas study that he presumably was totally disabled by pneumoconiosis due to his coal mine employment. Unless that presumption was effectively rebutted in accordance with the regulations, Dalton had accomplished all that was necessary to maintain his claim to benefits under the Act.
 
 
 15
 The regulations provide four, specific, evidentiary methods for rebutting the presumption of total disability due to coal mine employment. For rebuttal purposes it is immaterial under which of the regulatory bases the presumption is invoked. What is important is that
 
 
 16
 all relevant medical evidence must be considered and weighed, including, but not exclusively, nonqualifying X-rays, test results, and opinions, regardless of the section under which the presumption was invoked. This consideration is limited only by the single X-ray statute, 30 U.S.C. Sec. 923(b) (a claim may not be denied solely on the basis of one negative chest X-ray).
 
 
 17
 Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 427 (4th Cir.1986) (en banc) (emphasis in original), rev'd in part sub nom. Mullins Coal Co. Inc. v. Director, Office of Workers' Compensation Programs, 56 U.S.L.W. 4044 (U.S. Dec. 14, 1987) (No. 86-327).
 
 
 18
 The presumption is rebutted if, "considering all relevant medical evidence," 20 C.F.R. Sec. 727.203(b), the evidence establishes that the miner
 
 
 19
 . is, in fact, doing his usual coal mine work or comparable and gainful work, Sec. .203(b)(1); or,
 
 
 20
 . is able to do his usual coal mine work or comparable and gainful work, Sec. .203(b)(2); or,
 
 
 21
 . is disabled by a condition that did not arise in whole or in part out of coal mine employment, Sec. .203(b)(3); or,
 
 
 22
 . does not have pneumoconiosis, Sec. .203(b)(4).
 
 III
 
 23
 Unquestionably, Dalton was not in fact doing his usual coal mine work; he ceased working in the mines in the 1930's and there was no evidence in the record that he was performing comparable and gainful work. Thus, there was no rebuttal under Sec. .203(b)(1).
 
 
 24
 The next inquiry for the finder of fact was whether "[i]n light of all relevant evidence it is established that [Dalton] is able to do his usual coal mine work or comparable and gainful work." 20 C.F.R. Sec. 727.203(b)(2) (emphasis added). In addressing rebuttal of the interim presumption under 20 C.F.R. Sec. 727.203(b)(2) we recently held that the least that is required for effective (b)(2) rebuttal is consideration of the physical demands and health requirements placed on a claimant by this work--"the plain words of the regulation mandate such consideration." Sykes v. Director, Office of Workers' Compensation Programs, 812 F.2d 890, 893 (4th Cir.1987); see also Adkins v. U.S. Department of Labor, Office of Workers' Compensation Programs, 824 F.2d 287, 290 (4th Cir.1987). No such consideration was given in this case to Dalton's usual coal mine work or comparable, gainful employment.
 
 
 25
 Our review of the record discloses that it is devoid of evidence evaluating the physical demands and health requirements of Dalton's usual work in the coal mines or of comparable, gainful employment; it follows that the ALJ could not have considered these essential elements in concluding that Dalton was still able to perform such work.
 
 
 26
 The ALJ expressly considered, and properly discounted, the conclusory, summary statement of Dalton's personal physician, Dr. Fulk, that he (Dalton) "has pneumoconiosis and is a permanent disability." Dr. Fulk did not state that he was knowledgeable of the physical demands and health requirements of coal mine work and whether Dalton could meet those standards; indeed, Dr. Fulk did not state what standards he considered in concluding that Dalton was disabled. Clearly, his was not a "reasoned medical judgment, based on medically acceptable clinical and laboratory techniques" within the meaning of the regulations. See 20 C.F.R. Secs. 718.204(c)(4) and 727.203(a)(4).
 
 
 27
 Thus, the medical evidence relied upon by the ALJ was limited essentially to the opinion of Dr. Schwartzberg and the clinical test results. However, Dr. Schwartzberg's diagnosis was only that Dalton had "no objective findings of pulmonary disease" and that he (Dr. Schwartzberg) could not "make the diagnosis of pneumoconiosis"; the record does not disclose that Dr. Schwartzberg was aware of the physical demands and health requirements of Dalton's usual coal mine work or comparable, gainful employment. The conclusion deducible from the test results is similarly unenlightening: some results (the arterial blood gas studies) indicated the presence of pneumoconiosis, while others did not.
 
 
 28
 This is not effective (b)(2) rebuttal and the BRB erred in affirming the ALJ's denial of benefits under this regulatory provision.
 
 
 29
 Clearly, all this medical evidence was relevant to the issues of whether Dalton's disability did not arise wholly or partially from his coal mine employment, 20 C.F.R. Sec. 727.203(b)(3), or whether he did not have pneumoconiosis, Sec. .203(b)(4), but in the absence of evidence of the health requirements and exertional demands of Dalton's usual mine work or comparable, gainful work, the medical evidence was insufficient for a determination whether Dalton--legally presumed to be disabled--could perform his usual or comparable labors. In this setting, Dr. Schwartzberg's reports and the nonqualifying test results are limited in relevance to rebuttal under 20 C.F.R. Sec. 727.203(b)(3) (miner's disability did not arise wholly or partially out of coal mine employment) and (b)(4) (miner does not have pneumoconiosis). The ALJ determined that rebuttal was established under Sec. .203(b)(3), but the BRB expressly declined to affirm on this point; the record does not disclose whether the ALJ considered (b)(4) rebuttal.
 
 
 30
 The BRB erred in disregarding the ALJ's finding of rebuttal under Sec. .203(b)(3). Accordingly, the case is remanded to the Benefits Review Board for a determination whether the presumption of total disability due to pneumoconiosis arising from Dalton's coal mine employment is rebutted under 20 C.F.R. Sec. 727.203(b)(3).
 
 
 31
 During the pendency of this review petitioner Helen Dalton moved to admit into the record two 1985 autopsy reports which she deems supportive of her claims; the reports obviously post-date the hearing before the ALJ and were not in the record before him. Petitioner's motion is denied; this Court reviews only the record that was before the ALJ and the BRB. See 20 C.F.R. Secs. 725.456 and 802.301, and Plutt v. Benefits Review Board, 804 F.2d 597, 599 (10th Cir.1986).
 
 
 32
 MOTION TO AMEND RECORD DENIED, REVERSED AND REMANDED
 
 
 
 [1]
 Carl Dalton died in February 1985, during the pendency of his appeal to the Benefits Review Board; his death was not suggested to the BRB while his appeal was under its consideration. In this Court, the Director conceded that Carl Dalton's widow, Helen Dalton, as successor in interest to Carl Dalton, qualified as an "aggrieved" person, pursuant to 33 U.S.C. Sec. 921(c), and agreed to her being designated by the clerk of this Court as a party-petitioner
 
 
 [2]
 Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairment, arising out of coal mine employment ... including any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment." 20 C.F.R. Sec. 727.202 (1987)
 
 
 [3]
 The National Institute of Occupational Safety and Health [NIOSH], U.S. Health Service, rates physicians in their proficiency for interpreting X-rays. 29 C.F.R. Sec. 37.51. Physicians can be rated as "A" (first) or "B" (final) readers, according to their demonstrated proficiency. A "B" rating denotes a reader of greater experience and proficiency; "B" readers' interpretations may be accorded greater weight by the factfinder. Sharpless v. Califano, 585 F.2d 664 (4th Cir.1978)
 
 
 [4]
 I.e., test results not meeting the regulatory minima to invoke the presumption of total disability due to pneumoconiosis arising from coal mine employment. 20 C.F.R. Sec. 727.203(a)
 
 
 [5]
 20 C.F.R. Sec. 727.203(a): "A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... arising out of that employment, if one of the following medial requirements is met:
 (3) Blood gas studies which demonstrate ... an impairment in the transfer of oxygen to the blood...."