849 F.2d 604
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Claude F. AKERS, Petitioner,
v.
SLAB FORK COAL COMPANY; West Virginia C.W.P. Fund;
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.
 No. 87-3564.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 26, 1988.
Decided: June 3, 1988.
 
 S.F. Raymond Smith (United Mine Workers of America), for petitioner.
 James Michael O'Neill, Nicholas Joseph Levintow, (United States Department of Labor), for respondents.
 Before K.K. HALL, SPROUSE and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Claude F. Akers labored 32 years in the nation's coal mines as a mainline motor runner. He retired following heart attacks in 1974 and 1975. In 1976 he applied for disability benefits provided under the Black Lung Benefits Act, as amended, 30 U.S.C. Secs. 901-945 (the Act). The application was heard by an administrative law judge (ALJ) in 1984, who concluded that Akers was still capable of performing his usual coal mine work or comparable, gainful employment and was not, therefore, entitled to benefits under the Act. On appeal, the Benefits Review Board (BRB) affirmed the ALJ's decision. We reverse.
 
 
 2
 * Black Lung disability benefits are payable to a miner if (i) he is totally disabled, (ii) the disability was caused, at least partially, by pneumoconiosis[1] and (iii) the disability arose out of coal mine employment. By regulation, all three of these conditions are presumed if the miner was engaged in coal mine employment for at least ten years and meets one of four medical requirements: (1) a chest X-ray establishes the presence of pneumoconiosis; (2) ventilatory studies establish the presence of a respiratory or pulmonary disease--not necessarily pneumoconiosis--of a specified severity; (3) arterial blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory impairment. 20 C.F.R. Sec. 727.203(a) (1987); see Mullins Coal Co., Inc. v. Director, Officer of Workers' Compensation Programs, 56 U.S.L.W. 4044, 4045 (U.S. Dec. 14, 1987) (No. 86-327).
 
 
 3
 The medical evidence adduced at the hearing before the ALJ included
 
 
 4
 . One chest X-ray interpreted by a board-eligible[2] radiologist as positive for pneumoconiosis.[3]
 
 
 5
 . A 1976 physical examination report by D.L. Rasmussen, M.D., containing reports of blood gas studies and ventilatory studies which did not produce results indicating the presence of pneumoconiosis.
 
 
 6
 . The results of 1979 blood gas and ventilatory studies which did not produce results indicating the presence of pneumoconiosis; Dr. Rasmussen determined from these studies that the ability of Akers's lungs to exchange oxygen was "minimally to moderately impaired," that his ventilatory response upon exertion was "very abnormal," that Akers was approximately 40% functionally incapacitated, and that he appeared capable of performing "steady work at moderate work levels."
 
 
 7
 . The deposition of A.R. Piracha, M.D., who examined Akers in 1981; Dr. Piracha concluded that Akers had X-ray evidence of what he deemed to be non-disabling pneumoconiosis and that Akers should be able to perform heavy, manual labor over a sustained period of time.
 
 
 8
 Based upon the positive chest X-ray, the ALJ accorded Akers the evidentiary benefit of the regulatory presumption of total disability,[4] but found that the presumption was rebutted under 20 C.F.R. Sec. 727.203(b)(2) by Dr. Rasmussen's conclusion that Akers was still able to perform "steady work at moderate work levels." Accordingly, the ALJ determined that Akers was not entitled to benefits; the BRB affirmed.
 
 II
 
 9
 The Benefits Review Board's scope of review of administrative law judges' decisions and orders is governed by statute and regulation:
 
 
 10
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 11
 20 C.F.R. Sec. 802.301 (1987); 33 U.S.C. Sec. 921(b)(3), incorporated into the Act by 30 U.S.C. Sec. 932(a). Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189-90 (4th Cir.1985); Wilson v. Benefits Review Board, 748 F.2d 198, 199-200 (4th Cir.1984). On appeal we consider, as did the Board, whether there was substantial evidence to support the ALJ's decision and order. See Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs, 642 F.2d 68, 69 (4th Cir.1981); see also Zbosnik, 759 F.2d at 1189-90, and Eplion v. Director, Office of Workers' Compensation Programs, 794 F.2d 935, 936 (4th Cir.1986).
 
 
 12
 The regulations governing benefits for black lung disease set out a reasonably straightforward, analytical process that was not adhered to in this case. Akers established, by the positive X-ray reading, an evidentiary presumption that he was totally disabled by pneumoconiosis due to his coal mine employment. Unless that presumption was effectively rebutted in accordance with the regulations, Akers had accomplished all that was necessary to maintain his claim to benefits under the Act.
 
 
 13
 The regulations provide four, specific, evidentiary methods for rebutting the presumption of total disability due to coal mine employment. For rebuttal purposes it is immaterial under which of the regulatory bases the presumption is invoked. What is important is that
 
 
 14
 all relevant medical evidence must be considered and weighed, including, but not exclusively, nonqualifying X-rays, test results, and opinions, regardless of the section under which the presumption was invoked. This consideration is limited only by the single X-ray statute, 30 U.S.C. Sec. 923(b) (a claim may not be denied solely on the basis of one negative chest X-ray).
 
 
 15
 Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 427 (4th Cir.1986) (en banc) (emphasis in original), rev'd in part sub nom. Mullins Coal Co., Inc., v. Director, Office of Workers' Compensation Programs, 56 U.S.L.W. 4044 (U.S. Dec. 14, 1987) (No. 86-327).
 
 
 16
 The presumption is rebutted if, "considering all relevant medical evidence," 20 C.F.R. Sec. 727.203(b), the evidence establishes that the miner
 
 
 17
 . is, in fact, doing his usual coal mine work or comparable and gainful work, Sec. .203(b)(1); or,
 
 
 18
 . is able to do his usual coal mine work or comparable and gainful work, Sec. .203(b)(2); or,
 
 
 19
 . is disabled by a condition that did not arise in whole or in part out of coal mine employment, Sec. .203(b)(3); or,
 
 
 20
 . does not have pneumoconiosis, Sec. .203(b)(4).
 
 III
 
 21
 Unquestionably, Akers was not in fact doing his usual coal mine work; he ceased working in 1975 after his second heart attack and there was no evidence in the record that he was performing comparable and gainful work. Thus, there was no rebuttal under Sec. .203(b)(1).
 
 
 22
 The next inquiry for the factfinder was whether "[i]n light of all relevant evidence it is established that [Akers] is able to do his usual coal mine work or comparable and gainful work." 20 C.F.R. Sec. 727.203(b)(2) (emphasis added). The ALJ determined that Akers was able to return as a mainline motor runner because an examining physician, Dr. Rasmussen, concluded that he "could perform steady work at moderate work levels." The BRB affirmed on this basis.
 
 
 23
 This was error.
 
 
 24
 The ALJ substituted the physician's judgment for his own and allowed the physician's insufficiently-founded conclusion to be dispositive of Akers's application for black lung benefits. Akers never applied to a physician for benefits; he applied to the United States Department of Labor and he is entitled to have that agency decide his eligibility:
 
 
 25
 The function of deciding whether ... an individual is totally disabled due to pneumoconiosis ... is the responsibility of the Administration. A statement by a physician that an individual is, or is not, "disabled," "permanently disabled," "totally disabled," "totally and permanently disabled," "unable to work," or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Administration, shall not be determinative of the question of whether ... an individual is under a disability....
 
 
 26
 20 C.F.R. Sec. 410.471 (1987) (emphasis added).
 
 
 27
 Further, in addressing rebuttal of the interim presumption under 20 C.F.R. Sec. 727.203(b)(2) we recently held that the least that is required for effective (b)(2) rebuttal is consideration of the physical demands and health requirements placed on a claimant by his work--"the plain words of the regulation mandate such consideration." Sykes v. Director, Office of Workers' Compensation Programs, 812 F.2d 890, 893 (4th Cir.1987); see also Adkins v. U.S. Department of Labor, Office of Workers' Compensation Programs, 824 F.2d 287, 290 (4th Cir.1987).
 
 
 28
 Additionally, we held that rebuttal under Sec. 727.203(b)(2) is improper if a miner is
 
 
 29
 totally disabled "for whatever reason." There is no inquiry into causation in a proper Sec. 727.203(b)(2) rebuttal. The reference in that subsection to Sec. 410 merely clarifies the nature of "usual and comparable work"; it does not bring causation into question. Causation is addressed in Sec. 727.203(b)(3). Once the miner's disability is conceded, then the question arises whether that disability is unrelated to mine work.
 
 
 30
 Sykes, 812 F.2d at 893-94 (emphasis in original).
 
 
 31
 The record is devoid of evidence evaluating the physical demands of Akers's former work as a mainline motor runner. Akers testified without contradiction that his duties included loading and emptying coal cars, operating coal cars, placing derailed cars back onto the tracks, laying rail track, and whatever else the supervisors directed him to do. This evidence is merely a catalog of tasks Akers performed; it is no basis for an extrapolation of the physical exertion required to perform those tasks or of the impact Akers's pulmonary insufficiency would have on his ability to perform the tasks. Without knowing the physical exertion required in the performance of his tasks, Dr. Rasmussen's conclusion that Akers "could probably engage in moderate physical work with walking, no climbing, and regular lifting up to 25 lbs." is unresponsive to the question whether the miner is capable of performing his usual coal mine work or comparable and gainful work; the record does not disclose that Dr. Rasmussen even was aware of the exertional demands of Akers's coal mine work.
 
 
 32
 Dr. Rasmussen's reports must also be considered with Dr. Abdul R. Piracha's deposition testimony. Dr. Piracha concluded that "from a pulmonary standpoint"--again, a prohibited interjection of the issue of causation into the inquiry whether the miner is able to perform his work--Akers would be able to perform heavy, manual labor. "Heavy, manual labor" hardly can be equated with "moderate physical work with walking, no climbing, and regular lifting up to 25 lbs.," as Dr. Rasmussen concluded. The obvious divergences in the examining physicians' reports apparently were neither considered nor reconciled by the ALJ or the Board; indeed, Dr. Piracha's testimony was not even mentioned in either of their decisions and orders.
 
 
 33
 This unreconciled disparity in expert opinions left the ALJ without a reasoned, documented, medical opinion or other substantial evidence upon which he could evaluate the miner's disability.
 
 
 34
 Finally, the record suggests that Akers's disability may be partially attributable to cardiovascular infirmities, which might tend to rebut the presumption under 20 C.F.R. Sec. 727.203(b)(3). However, rebuttal is accomplished under (b)(3) only if the employer
 
 
 35
 rule[s] out the causal relationship between the miner's total disability and his coal mine employment....
 
 
 36
 The "in whole or in part" language ... of section 727.203(b)(3) simply reflects the current uncertain state of medical knowledge concerning the exact consequences of prolonged exposure to coal dust.... The reality of coal mine employment is such that many physical and environmental factors may converge to produce a totally disabling respiratory or pulmonary impairment. The ... rebuttal regulation acknowledges this reality and, consistent with the letter and spirit of the Black Lung Act and traditional workers' compensation principles, places the burden on the employer to disprove the causal relationship between coal mine employment and total disability once the claimant establishes the existence of a qualifying medical condition.... [The employer's] proof ... must establish that the miner's primary condition ... was not aggravated to the point of total disability by prolonged exposure to coal dust.
 
 
 37
 Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123-24 (4th Cir.1984) (emphasis in original). The record does not negate that Akers's disability arose in whole or in part from his coal mine employment. Thus, there can be no rebuttal under 20 C.F.R. Sec. 727.203(b)(3).
 
 
 38
 We find, therefore, that the ALJ's denial of benefits, and the BRB's affirmance of his denial, is not supported by substantial evidence in the record. Accordingly, we reverse the BRB's affirmance of the ALJ's decision and order and direct that benefits under the Act be awarded Claude F. Akers. We also find that the facts and legal arguments are adequately presented in the petitioner's brief and appendix[5] and that the decisional process would not be significantly aided by oral argument; consequently, we dispense with oral argument pursuant to Fed.R.App.P. 34(a) and Loc.R. 34(a).
 
 
 39
 REVERSED.
 
 
 
 [1]
 Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairment, arising out of coal mine employment." 20 C.F.R. Sec. 727.202 (1987)
 
 
 [2]
 The American Board of Radiology, Inc., and the American Osteopathic Association have developed procedures for testing and certifying physicians in radiology and diagnostic roentgenology. For purposes of applying the black lung regulations, a "board certified" physician is one whose competency in radiology and diagnostic roentgenology has been certified by one of these agencies; a "board eligible" physician has successfully completed a formal, accredited, residency program in radiology and diagnostic roentgenology but has not yet been certified. See 20 C.F.R. Sec. 718.202(a)(1)(ii)(C) & (D) (1987)
 
 
 [3]
 This X-ray subsequently was interpreted by another physician as negative for the presence of pneumoconiosis; however, the ALJ disregarded this interpretation
 
 
 [4]
 "A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... if one of the following medical requirements is met: (1) A chest roentgenogram (X-ray) ... establishes the existence of pneumoconiosis...." 20 C.F.R. Sec. 727.203(a)
 
 
 [5]
 Akers last worked for Slab Fork Coal Company. Correspondence in the record and to the Court during the pendency of this appeal discloses that Slab Fork Coal Company is no longer in business and that the West Virginia Coal-Workers' Compensation Fund will be liable for Akers's benefits. However, the director of the West Virginia Coal-Workers' Compensation Fund notified the Court that the Fund does not provide legal counsel on behalf of its subscribing operators. Further, the U.S. Department of Labor notified the Court that this appeal lacks "the type of significant impact on administration of the black lung program that would warrant the Director's [of the Office of Workers' Compensation Programs] participation ... in the absence of liability for benefits on the part of the Black Lung Disability Trust Fund." Accordingly, neither the West Virginia Coal-Workers' Compensation Fund nor the Department of Labor took a position on the issues in this appeal and, consequently, we decided the case without benefit of counter-briefs