861 F.2d 263
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Cecil BLEVINS, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Respondent.
 No. 87-3607.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 15, 1988.
Decided Oct. 5, 1988.
 
 S.F. Raymond Smith (United Mine Workers of America) for petitioner.
 George R. Salem, Donald S. Shire, Barbara J. Johnson, Thomas L. Holzman, Priscilla Anne Schwab (U.S. Department of Labor) for respondent.
 Before ERVIN and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Cecil Blevins, a former coal miner, applied in 1970 for disability benefits provided under the Black Lung Benefits Act, as amended, 30 U.S.C. Secs. 901 et seq. [the Act]. His application was heard in 1985 by an administrative law judge [ALJ] who concluded that Blevins's disability arose not from his coal mine employment but from cardiac infirmities, and that Blevins was not, therefore, entitled to benefits under the Act. On appeal, the Benefits Review Board [BRB, or the Board] affirmed the ALJ's decision and order. We affirm.
 
 
 2
 * Black Lung disability benefits are allowable to a miner if (i) he is totally disabled, (ii) the disability was caused, at least partially, by pneumoconiosis[1] and (iii) the disability arose out of coal mine employment. All three of these conditions are presumed if the miner was engaged in coal mine employment for at least ten years[2] and meets one of four medical requirements: (1) a chest X-ray establishes the presence of pneumoconiosis; (2) ventilatory studies establish the presence of a respiratory or pulmonary disease--not necessarily pneumoconiosis--of a specified severity; (3) blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory impairment. 20 C.F.R. Sec. 727.203 (1987); see Mullins Coal Co., Inc. v. Director, Officer of Workers' Compensation Programs, 56 U.S.L.W. 4044, 4045 (U.S. Dec. 14, 1987) (No. 86-327). This statutory and regulatory presumption of disability is referred to as the "interim presumption." See 20 C.F.R. Sec. 727.203.
 
 
 3
 The medical evidence adduced at the hearing before the ALJ included:
 
 
 4
 . Six chest X-rays taken between February 1971 and April 1985. February 1971 and September 1980 X-rays were interpreted by two "B" readers[3] and a board-certified radiologist[4] as negative for the presence of pneumoconiosis. A June 1974 X-ray was interpreted by an "A" reader as positive. A February 1975 X-ray was interpreted by a board-certified radiologist as indicating "possible chronic obstructive pulmonary disease or pneumoconiosis." Two April 1987 X-rays were interpreted as negative by a "B" reader and by another physician whose radiological interpretation credentials are not disclosed by the record.
 
 
 5
 . Five pulmonary function tests conducted between June 1973 and April 1985. Only one of the five--the last one--produced qualifying[5] results; however, the ALJ discredited this result because of the administering physcian's conclusion that the test showed "no evidence of significant obstructive or restrictive ventilatory defect."
 
 
 6
 . Four blood-gas tests performed between June 1974 and April 1985. The ALJ found that the June 1974 test produced qualifying results; however, he discredited these results because of the preponderance of non-qualifying results produced by subsequent tests and because of the expert opinions of two physicians that Blevins's pulmonary functions were normal.
 
 
 7
 . The expert medical opinions of four examining physicians. The physicians were in accord that Blevins's heart and lungs exhibited a marked deficiency in their transfer of oxygen from the lungs to the blood; they were not in accord as to whether the lungs or the heart was the deficient organ, however. One of the physicians, Dr. D.L. Rasmussen, rated Blevins's loss of functional capacity at 85 percent and concluded he was unable to perform more than sedentary work; considering the obvious exertional requirements of Blevins's work as a coal miner, the ALJ equated this evaluation as tantamount to a finding of total disability. However, Dr. Rasmussen did not diagnose Blevins as suffering pneumoconiosis. Conversely, a second physician, Dr. Allan R. Goldstein, examined Blevins and reviewed Dr. Rasmussen's reports and found "little evidence of severe disability"; Dr. Goldstein essentially eliminated pneumoconiosis as a diagnosis, but left open the door to a diagnosis of silicosis in the event subsequent biopsies and cytologic examinations of lung tissue were performed. Two other examining physicians, Drs. L.C. Rao and Neal C. Chadwick, concluded that Blevins's disability was attributable to heart disease rather than to pulmonary deficiencies.
 
 
 8
 After weighing the inconclusive, inconsistent, and conflicting evidence from the X-ray readings, ventilatory studies, blood-gas studies, and physicians' reports, the ALJ concluded that the interim presumption of total disability due to pneumoconiosis arising from coal mine employment was not invocable; further, the ALJ stated in his decision and order that even if the interim presumption were invocable, it would have been found rebutted pursuant to 20 C.F.R. Sec. 727.203(b)(3) by the evidence tending to establish that Blevins's physical infirmities arose from his heart condition rather than from his employment in the nation's coal mines. Consequently, the ALJ denied disability benefits to Blevins; Blevins appealed to the Benefits Review Board.
 
 II
 
 9
 At the time Blevins's appeal was before the BRB, our en banc opinion in Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986), condemned the weighing of evidence in determining the invocability of the interim presumption and required that the presumption be invoked on the basis of a single item of qualifying evidence. Accordingly, the BRB treated as error the ALJ's weighing of the evidence in Blevins's case and ruled as a matter of law that the interim presumption should have been invoked on the basis of the single positive X-ray, pursuant to 20 C.F.R. Sec. 727.203(a)(1). However, the BRB affirmed the ALJ's conclusion that the interim presumption would have been rebutted--if invoked--by substantial evidence that Blevins's disability did not arise in whole or in part out of coal mine employment, pursuant to 20 C.F.R. Sec. 727.203(b)(3). Subsequent to the BRB's affirming the ALJ's decision and order, Stapleton was reversed sub nom. Mullins Coal Co. Inc. v. Director, Office of Workers' Compensation Programs, 56 U.S.L.W. 4044 (U.S. Dec. 14, 1987) (No. 86-327).
 
 
 10
 In his petition for review Blevins assigns as error the BRB's affirming the ALJ's conclusion that the interim presumption--had it been invoked--would have been rebutted by the evidence that his disability did not arise in whole or in part out of coal mine employment. Blevins maintains that the interim presumption should have been invoked pursuant to Stapleton and, once invoked, could only be rebutted by evidence more substantial than the widely divergent medical reports and inconclusive clinical test results before the ALJ.
 
 
 11
 Were Stapleton still controlling law, Blevins's argument might be compelling. However, the Mullins decision deprives his arguments of viability.
 
 III
 
 12
 The Benefits Review Board's scope of review of administrative law judges' decisions and orders is governed by statute and regulation:
 
 
 13
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 14
 20 C.F.R. Sec. 802.301 (1987); 33 U.S.C. Sec. 921(b)(3), incorporated into the Act by 30 U.S.C. Sec. 932(a). Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189-90 (4th Cir.1985); Wilson v. Benefits Review Board, 748 F.2d 198, 199-200 (4th Cir.1984). On appeal we consider, as did the Board, whether there was substantial evidence to support the ALJ's decision and order. See Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs, 642 F.2d 68, 69 (4th Cir.1981); see also Zbosnik, 759 F.2d at 1189-90, and Eplion v. Director, Office of Workers' Compensation Programs, 794 F.2d 935, 936 (4th Cir.1986).
 
 
 15
 Our review of the record and the parties' briefs discloses that there is substantial evidence to support the ALJ's conclusion that the medical evidence, considered as a whole, is insufficient both for invoking the interim presumption and for proving that Blevins is totally disabled by pneumoconiosis arising from his coal mine employment.
 
 
 16
 Accordingly, we affirm the BRB's 22 July 1987 decision and order affirming the ALJ's 10 December 1985 order denying Cecil Blevins's application for black lung disability benefits. We find that the facts and legal arguments are adequately presented in the record and the parties' briefs, that the dispositive issues have been recently authoritatively decided, and that the decisional process would not be significantly aided by oral argument; consequently, we dispense with oral argument pursuant to Fed.R.App.P. 34(a) and Loc.R. 34(a).
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairment, arising out of coal mine employment ... including any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment." 20 C.F.R. Sec. 727.202 (1987)
 
 
 [2]
 The ALJ credited Blevins with 17 years employment in the nation's coal mines
 
 
 [3]
 The National Institute of Occupational Safety and Health (NIOSH), U.S. Health Service, rates physicians in their proficiency for interpreting X-rays. 29 C.F.R. Sec. 37.51. Physicians can be rated as "A" (first) or "B" (final) readers, according to their demonstrated proficiency. A "B" rating denotes a reader of greater experience and proficiency; "B" readers' interpretations may be accorded greater weight by the factfinder. Sharpless v. Califano, 585 F.2d 664 (4th Cir.1978)
 
 
 [4]
 The American Board of Radiology, Inc., and the American Osteopathic Association have developed procedures for testing and certifying physicians in radiology and diagnostic roentgenology. For purposes of applying the black lung regulations, a "board-certified" physician is one whose competency in radiology and diagnostic roentgenology has been certified by one of these agencies. See 20 C.F.R. Sec. 718.202(a)(1)(ii)(C) & (D) (1987)
 
 
 [5]
 I.e., the results were sufficient to trigger the interim presumption of total disability due to pneumoconiosis. See 20 C.F.R. Sec. 727.203(a)