Homer R. SYKES, Petitioner,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR and Itmann Coal Company, a corporation, Respondents.**

No. 85–1441.

United States Court of Appeals, Fourth Circuit.

Argued November 11, 1986.

Decided March 3, 1987.

filed his district court complaint *pro se.*

 

W. Richard Staton, D. Grove Moler, Moler & Staton, Mullens, W. Va., on brief, for petitioner.

Douglas A. Smoot (Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for respondents.

Before WIDENER, PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

### I.

Petitioner Homer Sykes worked in coal mines for over forty years. Prior to 1950, he was a motorman inside the mines. Nearly all of his more recent work occurred above ground as a heavy-equipment operator and mechanic. He retired from his last coal mining job in 1976 because of shortness of breath. Sykes had never lost time working in the mines from respiratory problems or any of his other injuries; he was a dedicated worker who was asked to remain in his position even after retirement age. He testified that his breathing difficulty kept him from staying on the job.

In 1972, Sykes was examined and tested for state occupational pneumoconiosis benefits. Three doctors interpreted his x-ray as showing some degree of pneumoconiosis. Pulmonary function studies from that date were just outside the range required for invocation of the federal interim presumption of disability.[1] Sykes received a state award based on a 25% loss of pulmonary capacity.

Sykes filed a petition for federal black lung benefits in 1974. He was examined that year by Dr. A.R. Piracha, who found chronic obstructive pulmonary disease with a minimal to moderate level of impairment. An x-ray taken in 1974 was read by a field reader as showing simple pneumoconiosis, q-type, of a 3/3 profusion. The Department of Labor requested another interpretation. A B-reader, Dr. William S. Cole, read simple pneumoconiosis, r-type, of 2/2 profusion. Dr. Cole also found the film to indicate complicated pneumoconiosis, cate-

---

1. *See* 20 C.F.R. § 727.203(a)(2) (1986). Sykes' 1972 ventilatory study produced an FEV-1 of 2.6 and an MVV of 89. According to his medical report, he was 69 inches tall in 1972. The § 727.203(a)(2) qualifying figures for a miner 69 inches tall are an FEV-1 of 2.4 and an MVV of 96. By the time of his last available test, by Dr. Pushkin in 1979, Sykes scored an FEV-1 of 2.538 and an MVV of 62. His height was then listed as 67 inches. Dr. Pushkin attributed the very low MVV score to submaximal effort on the part of Sykes.

Counsel for Sykes indicated at oral argument that Sykes had consistently produced qualifying ventilatory test results prior to Dr. Pushkin's evaluation. However, in the record before us, none of the values are qualifying. All are just above the § 727.203(a)(2) levels. The existence of values that do not qualify to invoke the interim presumption, of course, is not determinative of the question whether a claimant is entitled to benefits. The presumption can be invoked in any of four ways, *see* 20 C.F.R. § 727.203(a)(1)–(4) (1986), and once invoked, rebuttal must be accomplished under one of the methods at § 727.203(b).

gory A. Three years later, the company obtained another reading of the same x-ray from Dr. Paul C. Francke, also a B-reader. Dr. Francke interpreted the film as simple pneumoconiosis, q-type, of a 2/1 profusion. He made no finding of complicated pneumoconiosis.

After Dr. Cole's reading of complicated pneumoconiosis, the Department of Labor determined that Sykes was entitled to benefits under the irrebuttable presumption of § 411(c)(3), 30 U.S.C. § 921(c)(3) (1982). The company controverted the claim, and a hearing was set before an administrative law judge (ALJ). The company arranged for Sykes to be examined by a physician of its choosing, as provided at 20 C.F.R. § 725.414(a) (1986). Sykes made two trips to this physician, Dr. Willard Pushkin, yielding the ventilatory test results noted *supra* note 1. But Sykes refused to submit to another x-ray, on the basis of a note from his treating physician, which said that further x-rays could endanger Sykes' health. Dr. Pushkin noted in his report that Sykes "has shortness of breath with minimal effort," "has difficulty negotiating a flight of stairs," has "chronic cough and expectorates mucoid sputum," and "wheezes and vomits a good deal." Dr. Pushkin opined that:

> 1. There is sufficient objective evidence to justify a diagnosis of coal workers' pneumoconiosis with respect to Mr. Sykes....
>
> 3. Mr. Sykes does not suffer from pulmonary or respiratory impairment, based on blood gas studies, as well as spirometry.

## II.

The ALJ awarded benefits based on the § 727.203 presumption at the one and only hearing that was ever held. The ALJ had the x-ray evidence of complicated pneumoconiosis before him, and the central issue in the hearing was whether or not Sykes would get benefits based on the irrebuttable presumption of 30 U.S.C. § 921(c)(3) (1982). The ALJ decided at the hearing not to consider the evidence of complicated pneumoconiosis because of possible preju-

dice to the employer in examining Sykes without the benefit of an additional x-ray. But in his written opinion, the ALJ reversed this decision *sua sponte* and claimed to have considered and rejected evidence of complicated pneumoconiosis.

The change of position between the hearing and the time of the written opinion, and the hearing transcript itself, indicate that the ALJ felt that Sykes definitely should receive benefits. The ALJ pegged his holding on the interim presumption rather than the irrebuttable presumption so as to avoid any appearance of prejudice to the employer from its inability to get a new x-ray film. At the hearing, there was little discussion of the other evidence in the case, including the Pushkin report. The ALJ concluded that the interim presumption was invoked by the x-ray evidence and was not rebutted under 20 C.F.R. § 727.203(b)(2) (miner able to do his usual coal mine work) or § 727.-203(b)(3) (total disability not caused by coal mine employment).

The ALJ considered the Pushkin report in his written opinion, but gave it less than compelling weight. The ALJ held that the Pushkin opinion "does not tend to affirmatively 'establish' the ability or lack of causation required by 727.203(b)" based on the actual wording of the opinion and the fact that its primary conclusion was premised solely on nonqualifying ventilatory and blood gas studies.

The Benefits Review Board (BRB or the Board) affirmed the ALJ's written treatment of the irrebuttable presumption evidence, but reversed the ALJ's finding of entitlement to benefits. The BRB first asserted that the ALJ completely ignored Dr. Pushkin's report; the Board then explained that a medical opinion on the severity of pulmonary impairment based on nonqualifying ventilatory or blood gas studies was competent rebuttal evidence. *See Sykes v. Itman Coal Co.,* 2 Black Lung Rep. 1–1089 (1980). The BRB remanded for renewed consideration of the medical evidence in the case on the question of a § 727.203(b)(2) rebuttal. One Board member dissented, urging that the ALJ's initial decision did consider the Pushkin report in a way that

accorded precisely with this court's approach to rebuttal of the interim presumption.

On remand, the ALJ reversed and denied benefits due to Dr. Pushkin's finding of no pulmonary impairment, while noting that three other doctors came to a different conclusion. None of those other doctors found that Sykes was totally disabled; however, the overall summary of the medical evidence was accurately given by the dissenting BRB member:

> All nine physicians expressing an opinion on the existence of pneumoconiosis agreed that claimant suffered from pneumoconiosis; ... of six physicians expressing an opinion on the existence of respiratory impairment, five physicians found that claimant suffers from a respiratory impairment; all five physicians expressing an opinion on claimant's work ability found that claimant had suffered a decrease in capacity to work; and only one physician was selected by the claimant, with all others being referrals by the Department of Labor, West Virginia Occupational Pneumoconiosis Board, or the employer.

*Id.* (dissenting opinion). Nevertheless, the BRB affirmed the denial of benefits in the second instance.

### III.

█ We agree with the dissenting BRB member: the initial ALJ decision, awarding benefits, was based on substantial evidence and should not have been vacated. The denial of benefits in this case would work a glaring injustice. The Board chided the ALJ for ignoring Dr. Pushkin's report, when in fact the ALJ considered that report, but properly chose not to give it controlling weight. The ALJ's choice of words in describing the Pushkin report was not ideal, but the context of his decision makes clear that he merely refused to credit it above the other reports that indicated the existence of some disability. Dr. Pushkin found that "Mr. Sykes does not suffer from pulmonary or respiratory *impair-*

*ment, based on blood gas studies, as well as spirometry*" (emphasis added). Considered alongside the other evidence in this case, including the opinion of a B-reader that Mr. Sykes had complicated pneumoconiosis, this statement alone does not compel the conclusion that "the individual is able to do his usual coal mine work or comparable and gainful work." 20 C.F.R. § 727.-203(b)(2) (1986). While Dr. Pushkin's statement is probative evidence for a rebuttal under § 727.203(b), it was a mistake for the Board to vacate the ALJ's decision and implicitly suggest that, on the basis of Dr. Pushkin's opinion alone, the interim presumption should be rebutted.

Dr. Pushkin's report fails to mention the exertive requirements of Sykes' job or the extent to which Sykes' symptoms would hinder his performing comparable work. A mere finding of "no impairment" under the American Medical Association standards cannot be equated with a finding that a claimant can continue to perform coal mining work. *See Sykes v. Itman Coal Co.*, 2 Black Lung Rep. 1–1089 (1980) (dissenting opinion). At the least, for an employer to rebut the interim presumption under § 727.203(b)(2), consideration should be given to the health requirements for work comparable to that performed by the claimant. The plain words of the regulation mandate such consideration. By remanding to the ALJ in this case and suggesting that Dr. Pushkin's opinion deserved more weight than it was initially given, the Board effectively dictated a result contrary to the one that the ALJ clearly believed was just.

█ The BRB has taken another position in this case which is contrary to the plain language of the statute. It held that an employer may rebut the interim presumption under § 727.203(b)(2) by showing that a miner, while concededly totally disabled, is not disabled for pulmonary or respiratory reasons. That is, the BRB asserted that a causation requirement may be imported into § 727.203(b)(2). This is belied by the words of the regulation.[2] Section 727.-

---

**2.** The two subsections read as follows:

> (b) *Rebuttal of interim presumption* ... The presumption in paragraph (a) of this section

203(b)(2) is concerned with the question of whether miners are totally disabled *for whatever reason.* There is no inquiry into causation in a proper § 727.203(b)(2) rebuttal. The reference in that subsection to § 410 merely clarifies the nature of "usual and comparable work"; it does not bring causation into question. Causation is addressed in § 727.203(b)(3). Once the miner's disability is conceded, *then* the question arises whether that disability is unrelated to mine work.

In the case of Mr. Sykes, a fair reading of the record shows that the ALJ and all who considered his affliction prior to the BRB reversal believed that this miner should receive benefits. The ALJ struggled with the proper way to award benefits; he might well have proceeded under the irrebuttable presumption initially relied on by the Department of Labor, had not Sykes' inability to produce another x-ray appeared to block his path. He instead wrote an opinion that relied on the rebuttable presumption and that dealt rather cursorily with all the medical evidence, including that of Dr. Pushkin. There was substantial evidence for his awarding of benefits, and the BRB should not have disturbed this initial decision. Since the Board did vacate the initial decision, with directions that more weight be placed on Dr. Pushkin's report, the ALJ was left with little choice on remand other than to switch positions and deny benefits.

The dissent was correct and the Board in error in *Sykes v. Itman Coal Co.,* 2 Black Lung Rep. 1–1089 (1980). Accordingly, we reverse and remand to the Board with instructions that the ALJ's initial decision be reinstated.

REVERSED.

---

shall be rebutted if:
. . . .

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment.

20 C.F.R. § 727.203(b) (1986).