884 F.2d 1387
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Millard E. DEEL, Petitioner,
v.
CONSOLIDATION COAL COMPANY; Director, Office of Workers
Compensation Program, United States Department of
Labor, United States Department of
Labor, Respondents.
 No. 88-2597.
 United States Court of Appeals, Fourth Circuit.
 Argued May 12, 1989.
Decided Aug. 16, 1989.
 
 Frederick Klein Muth (Hensley, Muth, Garton and Hayes on brief) for appellant.
 Douglas Allan Smoot (Jackson & Kelly on brief for appellee.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and FREDERIC NELSON SMALKIN, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Millard Lee Deel, the petitioner, filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq., asserting that he suffered total disability due to pneumoconiosis. An administrative law judge ("ALJ") held that Deel was entitled to the interim presumption of total disability under 20 C.F.R. Secs. 727.203(a)(1), (3) & (4), but nonetheless denied the claim for benefits, finding that the presumption had been rebutted because Deel could perform "his usual coal mine work." 20 C.F.R. Sec. 727.203(b)(2). The Benefits Review Board upheld the denial of benefits, and Deel petitioned this Court for review.
 
 I.
 
 2
 Deel, who worked in the coal mining industry for at least 19 years, retired in 1977 from his job as a foreman at Consolidation Coal Company ("Consolidation"). Deel's testimony presented somewhat contradictory versions of what the foreman's job entailed. He initially portrayed his job as involving significant amounts of physical labor, including shoveling up coal spills and lifting rocks. At another point in his testimony, however, Deel portrayed his job as more administrative in nature, with significant amounts of paperwork and indoor duties, although he emphasized that the job also required extensive walking around the work site. The ALJ interpreted Deel's testimony to mean that heavy physical labor was not an "essential" part of his job.
 
 
 3
 Deel testified that he left Consolidation in July 1977 after collapsing on the job and experiencing breathing problems. He also testified that he received social security disability benefits.
 
 
 4
 Deel's claim for benefits essentially turned on opposing medical opinions of two physicians, Dr. Mario S. Cardona and Dr. Robert Abernathy, who had each examined Deel twice.
 
 
 5
 Abernathy thoroughly examined Deel on September 18, 1980, at which time a chest x-ray, a pulmonary function study and an arterial blood gas test were performed on Deel. Abernathy interpreted the results of the pulmonary function study as "normal." The arterial blood gas study showed "somewhat significant" impairment of oxygen transfer that was not intensified by exercise.
 
 
 6
 Based on the test results, Abernathy concluded that Deel "probably ha[d] contracted coal worker's pneumoconiosis" but that the disease had "not involved the ventilatory system to produce either obstruction to airflow or emphysema." Abernathy ultimately concluded that Deel was "able to return to his usual occupation of being a mine foreman," and reiterated that conclusion in a 1983 letter and in a 1985 deposition.
 
 
 7
 Abernathy based that opinion on his own conceptions of what the foreman's job entailed, rather than on any specific knowledge of Deel's job requirements. Abernathy said he believed the job of foreman did not involve much heavy physical work, although he recognized that the position might require manual labor from time to time:
 
 
 8
 I think he [Deel] could probably do what some of the foremen do, which is occasionally to assist in moving timbers and other supplies, other equipment, but very seldom do they ever get into the actual management or operation of the mining equipment.
 
 
 9
 Abernathy added that Deel should have no problems if occasionally required to substitute for one of the workers in mining coal.
 
 
 10
 Abernathy examined Deel a second time on June 23, 1986. In his report, Abernathy noted that Deel's job as a mine foreman consisted of "overseeing the various sections and the area outside of the mine. This job involved primarily walking and he did walk fairly continuously." The ALJ found Abernathy's description of the foreman's job consistent with Deel's testimony.
 
 
 11
 Based on a physical examination and the results of a variety of tests, including a chest x-ray, pulmonary function study and blood gas test, Abernathy concluded:
 
 
 12
 It appears that [Deel] has some mild pulmonary disease as revealed by his history of cough and wheeze. However, the ventilatory studies reflect no severe obstructive component and indeed his function appeared to be quite adequate as measured by exercise testing.... [H]e should be able to continue with his regular occupation of mine foreman or section foreman so far as his lungs are concerned. He has sufficient respiratory capacity to walk continuously during the day.
 
 
 13
 (Emphasis added).
 
 
 14
 Dr. Cardona, however, reached a far different conclusion. During his first examination of Deel on June 25, 1979, Cardona performed a pulmonary function study, but did not conduct a blood gas test, as Abernathy had done. Without explaining his reasoning, Cardona concluded that Deel had a "severe" respiratory or pulmonary impairment.
 
 
 15
 Cardona examined Deel a second time on May 20, 1986. In a written report, Cardona noted that Deel had complained of "severe respiratory distress when walking more than 1000 feet at a slow pace, walking up gentle grades, or ascending more than six or seven single stairs without resting." Cardona performed a chest x-ray, a blood gas test and a pulmonary function study on Deel. The blood gas study results were "qualifying",[1] but the results of the pulmonary function study were not. The ALJ rejected the results of Cardona's blood gas test in favor of the non-qualifying blood gas study performed by Abernathy one month later. The ALJ apparently credited Abernathy's more recent blood gas study over Cardona's because pneumoconiosis is a progressive disease that, if it exists, becomes worse over time.
 
 
 16
 As a result of his tests, Cardona concluded that:
 
 
 17
 there can be little doubt that [Deel's] pulmonary status causes total disability.... Mr. Deel's pulmonary status has resulted in severe restrictions on his activities. It is my considered opinion that he is totally and permanently disabled from any type of work normally associated with the mining industry or comparable work which requires similar amounts of exertion as a direct result of this problem alone.
 
 
 18
 (Emphasis added).
 
 II.
 
 19
 Since there is no evidence that the ALJ applied an incorrect legal standard in assessing Deel's claim, this Court must uphold the denial of benefits "if supported by substantial evidence in the record considered as a whole." Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189 (4th Cir.1985). Here, substantial evidence supported the ALJ's finding that Deel could perform his usual mining job, and, therefore, that the presumption of disability had been rebutted under 20 C.F.R. Sec. 727.203(b)(2).
 
 
 20
 The ALJ's decision turned on a choice between contradictory medical opinions. The ALJ chose Dr. Abernathy's conclusion over Dr. Cardona's on grounds that the former was better documented and more fully supported by objective medical evidence than the latter. The ALJ's choice is supported by substantial evidence. Abernathy's two reports contain extensive discussions of the medical evidence and are well-reasoned. By contrast, Cardona's first report made conclusory observations supported by little, if any, explanation. Admittedly, Cardona's second report provided a more extensive analysis than his first. Yet even the second report seems less thorough than either of Abernathy's analyses. Moreover, Deel's attorney had the opportunity to challenge Abernathy on cross-examination during his deposition. Even when challenged, Abernathy reiterated his conclusion that Deel could work as a mine foreman. By contrast, the record contains no deposition or hearing testimony from Cardona.
 
 
 21
 Perhaps most importantly, the ALJ credited Abernathy's opinion over Cardona's because Abernathy was a board-certified internist. By contrast, the record contained no information as to Cardona's medical qualifications. The ALJ understandably hesitated to accept an opinion of a physician without knowing his qualifications to make such an evaluation.
 
 
 22
 Deel argues, however, that Abernathy rendered his opinion without knowing the full extent of Deel's job duties. We have emphasized that "the least that is required for rebuttal under [20 C.F.R. Sec. 727.203](b)(2) is that consideration be given to the physical demands placed on a claimant by his work." Adkins v. Dep't of Labor, 824 F.2d 287, 290 (4th Cir.1987), citing Sykes v. Director, OWCP, 812 F.2d 890, 893 (4th Cir.1987).
 
 
 23
 Contrary to Deel's assertion, Abernathy took Deel's work requirements into account in rendering his medical opinion. Specifically, Abernathy's second medical report noted the extensive walking required of a foreman, and was based on a description of the foreman's job that was consistent with Deel's own testimony. Deel complains that Abernathy did not take into account the physical labor, such as lifting, that the foreman's position entailed. The ALJ found, however, that although Deel testified to significant physical labor duties, other portions of his testimony indicated that heavy lifting was not an "essential" part of the job.
 
 
 24
 Abernathy's opinion supports the ALJ's decision even if Deel's job required some degree of physical labor, because Abernathy took the possibility of occasional lifting and other manual labor into account. In his deposition, Abernathy noted that Deel "could probably do what some of the foremen do, which is occasionally to assist in moving timbers and other supplies, other equipment...." Moreover, Abernathy stated that he did not foresee a problem if Deel occasionally substituted for an absent worker in mining coal. It seems clear that Abernathy understood the basic nature of Deel's job in rendering his medical opinion.
 
 
 25
 Finally, Deel argues that the ALJ failed to take into account evidence that Deel received social security disability benefits. Deel argues that such benefits provide evidence that he was physically unable to perform his usual work as a coal miner. The Benefits Review Board, however, found no error in the ALJ's failure to consider such evidence because Social Security Administration "findings are not binding upon the Department of Labor adjudication officer."
 
 
 26
 The ALJ should not ignore relevant evidence merely because it is not dispositive. The ALJ must "consider all the evidence and explain on the record the reasons for his findings, including the reason for rejecting relevant evidence in support of the claim." King v. Califano, 615 F.2d 1018, 1021 (4th Cir.1980) (emphasis added). Accord Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir.1984). Evidence of the Social Security Administration's finding of disability, while probably not dispositive, was at least arguably relevant to the ALJ's determination.
 
 
 27
 Nonetheless, the ALJ's failure to consider the social security disability finding does not require reversal here because Deel failed to bring the possible relevance of such evidence to the ALJ's attention. We see nothing in the record to indicate that Deel's attorneys argued to the ALJ that he should take into account the Social Security Administration findings. Moreover, the only reference to the social security disability benefits in the record is a single sentence of testimony from Deel. The following is the context in which that sentence appeared:
 
 
 28
 Q Do you have any income right now, Mr. Deel?
 
 
 29
 A Yes, sir.
 
 
 30
 Q Where do you get that income? Where does it come from?
 
 
 31
 A I am on disabled social security, and I get black lung, and I get a pension from the company.
 
 
 32
 Q Okay, Now, have you ever filed any claims for workers compensation?
 
 
 33
 A No. sir.
 
 
 34
 Q Did you ever file for--
 
 
 35
 A Well, just for rock dust if that is what you call it.
 
 
 36
 (Emphasis added). Such scant reference to the disability benefits was insufficient, we believe, to put the ALJ on notice as to the putative relevance of that information.
 
 
 37
 Black lung cases usually entail a wealth of technically complicated medical information, and Deel's was no different. Under such circumstances, it is understandable that an ALJ might overlook one sentence of testimony whose significance was not explicitly brought to his or her attention. That is especially true here because both parties at oral argument before the ALJ focused on the conflict between the opinions of Drs. Cardona and Abernathy. The ALJ understandably saw the case as turning on the choice between those two opinions.
 
 
 38
 A claimant should not be free to scour the hearing transcripts on appeal to discover a legal theory that he or she failed to bring to the ALJ's attention. Had Deel properly brought to the ALJ's attention evidence about the Social Security Administration's finding of disability, the ALJ may have had an obligation to consider that evidence and state explicitly his reasons for rejecting it. However, Deel did not fulfill his obligation, and thus the ALJ's failure to discuss the social security disability benefits does not represent reversible error.
 
 III.
 
 39
 Substantial evidence supports the ALJ's finding that Deel could perform his usual work as a mine foreman. The decision of the Benefits Review Board upholding the denial of benefits is
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 The term "qualifying" refers to "positive medical evidence that would suffice, absent contrary evidence of the same type, to invoke the presumption" of total disability due to pneumoconiosis. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, ---- n. 14, 108 S.Ct. 427, 432 n. 14 (1987)