889 F.2d 1084
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Eugene E. FRANCIS, Petitioner,
v.
KITCHEKAN COAL COMPANY, Respondent,
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest.
 No. 88-3821.
 United States Court of Appeals, Fourth Circuit.
 Submitted June 30, 1989.
Decided Nov. 2, 1989.
 
 Richard G. Rundle, Rundle & Rundle, LC, on brief for petitioner.
 Ronald E. Meisburg, William D. Florman, Smith, Heenan & Althen, on brief for respondent.
 Before WIDENER, SPROUSE, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Eugene E. Francis labored 30 years at various jobs in the nation's coal mines. Most of his career was spent in heavy labor as a handloader, a motorman/brakeman, a loading machine operator, a shuttle car operator, a roof bolter, and a foreman; the last 18 months were spent as supervisor of two of respondent's deep mines, a strip mine, and a processing plant. Respondent fired petitioner in December 1977 for reasons not fully developed in the record, and petitioner then turned to mining equipment sales, then to construction work. However, petitioner experienced shortness of breath and difficulty in performing the climbing and carrying activities required by construction work and he was soon felled by a heart attack. In 1979 petitioner applied for disability benefits allowed under the Black Lung Benefits Act, as amended [the Act], 30 U.S.C. Secs. 901 et seq. His application was heard by an Administrative Law Judge [ALJ] in 1984; the ALJ concluded that petitioner had pneumoconiosis but was still capable of performing his usual coal mine work or comparable, gainful employment and was not, therefore, entitled to benefits under the Act. On appeal the Benefits Review Board [BRB, or the Board] affirmed the ALJ's decision and order. We reverse.
 
 I.
 
 2
 Black lung disability benefits are payable to a miner if (i) he is totally disabled, (ii) the disability was caused, at least partially, by pneumoconiosis, and (iii) the disability arose out of coal mine employment. By regulation, all three of these conditions are presumed if the miner was engaged in coal mine employment for at least ten years and meets one of four medical requirements: (1) the existence of pneumoconiosis is established by evidence of chest X-rays, biopsy, or autopsy; (2) ventilatory studies establish the presence of a respiratory or pulmonary disease--not necessarily pneumoconiosis--of a specified severity; (3) arterial blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling impairment. 20 C.F.R. Sec. 727.203(a)(1)-(4) (1987); see Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 56 U.S.L.W. 4044, 4045 (U.S. Dec. 14, 1987) (No. 86-327).
 
 
 3
 The evidence adduced at the hearing before the ALJ included the following:
 
 
 4
 A. Chest X-ray evidence. Two chest X-rays were read and reread by four "B" readers[1] as positive for pneumoconiosis.
 
 
 5
 B. Pulmonary function tests. Five pulmonary function tests were performed; none produced qualifying results.
 
 
 6
 C. Arterial blood gas studies. Three arterial blood gas studies were performed--two by physicians and one by a technician. The first of the physician's tests, performed in May 1980, produced non-qualifying[2] results; the second physician's test, performed in May 1984, produced qualifying results. The technician's test, performed in June 1984, produced non-qualifying results.
 
 
 7
 D. Physicians' reports. The record contains the report of one examining physician and two reviewing physicians. Claimant was examined by Dr. Villaneuva in May 1980. For diagnostic purposes, Dr. Villaneuva also had available to her X-ray materials, pulmonary function tests, and arterial blood gas studies. In the medical assessment portion of her examination report, Dr. Villaneuva reported that petitioner had the ability to perform the following tasks:
 
 Walking (distance): 300-400 feet
 Climbing (stairs): 8-10 steps
 
 8
 Lifting (weight): 50 lbs.
 
 
 9
 Carrying (weight and distance): 25 lbs. 30-40 feet
 
 
 10
 Date these limitations were first manifested: 2-3 years ago
 
 
 11
 Dr. Villaneuva also diagnosed petitioner as suffering pneumoconiosis (based on X-ray evidence) related to his coal mine employment, but added that she found "no evidence of significant pulmonary dysfunction."
 
 
 12
 Dr. Passes reviewed the medical evidence and opined that petitioner had pneumoconiosis but no significant degree of pulmonary dysfunction.
 
 
 13
 Dr. Daniels was of the opinion, based on arterial blood gas test results, that petitioner had no significant evidence of pulmonary dysfunction.
 
 
 14
 The ALJ accorded Francis the evidentiary benefit of the interim presumption under 20 C.F.R. Sec. 727.203(a)(1) on the basis of the chest X-rays, but found that the presumption was rebutted under Sec. 727.203(b)(2) by the reviewing physicians' opinions that Francis was not totally disabled by the disease:
 
 
 15
 The weight of the medical evidence in this case, both in the case of the one examining and of the two reviewing physicians, is that this Claimant has coal workers' pneumoconiosis to a non-disabling degree.... In this respect, I find that (b)(2) rebuttal has been established, not principally on nonqualifying test results, but, rather, on the opinions of physicians to be found in the record.
 
 
 16
 Subsection (b)(3) rebuttal is not applicable in this case as it pertains to whether the total disability found arose out of the miner's coal mine employment. In this case, since disability has not been found, there is no issue whether disability arose out of coal mine employment.
 
 
 17
 .............................................................
 
 
 18
 ...................
 
 
 19
 * * *
 
 
 20
 The interim presumption, invoked in this case pursuant to subsection (a)(1), has been rebutted pursuant to subsection (b)(2) of the Sec. 727.203 regulations.
 
 
 21
 Accordingly, the ALJ denied Francis' application for black lung disability benefits. The BRB affirmed on a 2-1 vote. The dissenting member would have remanded the case for consideration in light of this Court's opinion in Sykes v. Director, Office of Workers' Compensation Programs, 812 F.2d 890 (4th Cir.1987).
 
 II.
 
 22
 The Benefits Review Board's scope of review of administrative law judges' decisions and orders is governed by statute and regulation:
 
 
 23
 The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.
 
 
 24
 20 C.F.R. Sec. 802.301 (1987); 33 U.S.C. Sec. 921(b)(3), incorporated into the Act by 30 U.S.C. Sec. 932(a). Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189-90 (4th Cir.1985); Wilson v. Benefits Review Board, 748 F.2d 198, 199-200 (4th Cir.1984). On appeal we consider, as did the Board, whether there was substantial evidence to support the ALJ's decision and order. See Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs, 642 F.2d 68, 69 (4th Cir.1981); see also Zbosnik, 759 F.2d at 1189-90, and Eplion v. Director, Office of Workers' Compensation Programs, 794 F.2d 935, 936 (4th Cir.1986).
 
 
 25
 The regulations governing benefits for black lung disease prescribe a reasonably straightforward, analytical process that was not adhered to in this case. Petitioner established by the positive X-ray reading and resulting evidentiary presumption that he was totally disabled by pneumoconiosis arising from his coal mine employment. Until that presumption was effectively rebutted in accordance with the regulations, petitioner had accomplished all that was necessary to maintain his claim to benefits under the Act.
 
 
 26
 The regulations provide four specific evidentiary methods for rebutting the presumption of total disability arising from coal mine employment. For rebuttal purposes it is immaterial under which of the four regulatory bases the presumption is invoked. What is important is that
 
 
 27
 all relevant medical evidence must be considered and weighed, including, but not exclusively, nonqualifying X-rays, test results, and opinions, regardless of the section under which the presumption was invoked. This consideration is limited only by the single X-ray statute, 30 U.S.C. Sec. 923(b) (a claim may not be denied solely on the basis of one negative X-ray).
 
 
 28
 Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 427 (4th Cir.1986) (en banc) (emphasis in original), rev'd in part sub nom. Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 56 U.S.L.W. 4044 (U.S. Dec. 14, 1987) (No. 86-327).
 
 
 29
 The presumption is rebutted if, "considering all relevant medical evidence," 20 C.F.R. Sec. 727.203(b), the evidence establishes that the miner
 
 
 30
 --is, in fact, doing his usual coal mine work or comparable and gainful work, Sec. 727.203(b)(1); or
 
 
 31
 --is able to do his usual coal mine work or comparable and gainful work, Sec. 727.203(b)(2); or
 
 
 32
 --is disabled by a condition that did not arise in whole or in part out of coal mine employment, Sec. 727.203(b)(3); or
 
 
 33
 --does not have pneumoconiosis, Sec. 727.203(b)(4).
 
 III.
 
 34
 Unquestionably, Francis was not in fact doing his usual coal mine work or any other work at the time of the hearing before the ALJ. Thus, the ALJ correctly concluded that rebuttal under Sec. 727.203(b)(1) was not possible.
 
 
 35
 The next inquiry for the factfinder was whether "[i]n light of all relevant evidence it is established that [Francis] is able to do his usual coal mine work or comparable and gainful work." Sec. 727.203(b)(2) (emphasis added). The ALJ determined that petitioner was able to return to his usual work in the mines because "[t]he weight of the medical opinion in this case, both in the case of the one examining and the two reviewing physicians, is that ... [petitioner] has coal workers' pneumoconiosis to a non-disabling degree...." The BRB affirmed on this basis.
 
 
 36
 This was reversible error.
 
 
 37
 The ALJ substituted the physicians' judgment for his own and allowed the physicians' insufficiently-founded conclusions to be dispositive of petitioner's application for black lung disability benefits. Eugene Francis never applied to a battery of physicians for disability benefits; he applied to the United States Department of Labor in accordance with statute and regulations and he is entitled to have that agency decide his eligibility in accordance with those laws:
 
 
 38
 The function of deciding whether ... an individual is totally disabled due to pneumoconiosis ... is the responsibility of the Administration. A statement by a physician that an individual is, or is not, "disabled," "permanently disabled," "totally disabled," "totally and permanently disabled," "unable to work," or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Administration, shall not be determinative of the question of whether ... an individual is under a disability....
 
 
 39
 20 C.F.R. Sec. 410.471 (1987) (emphasis added).
 
 
 40
 Further, in addressing rebuttal of the interim presumption under 20 C.F.R. Sec. 727.203(b)(2) we have held that the least that is required for effective (b)(2) rebuttal is consideration of the physical demands and health requirements placed on a claimant by his work--"the plain words of the regulation mandate such consideration." Sykes v. Director, Office of Workers' Compensation Programs, 812 F.2d 890, 893 (4th Cir.1987); see also Adkins v. U.S. Department of Labor, Office of Workers' Compensation Programs, 824 F.2d 287, 290 (4th Cir.1987). The record does not disclose that such consideration was given to petitioner's actual employment in this case. Quite the opposite.
 
 
 41
 The record is devoid of evidence evaluating the physical demands and health requirements of petitioner's former work as a coal mine supervisor. Petitioner testified that his supervisory duties required him to be in the mines from five to eight hours daily and to drive dusty roads while traveling between respondent's several mine sites under petitioner's supervision. Petitioner described his duties in the mines as requiring his presence at the coal loading sites six days a week to "see that everything was going right and that my orders were being obeyed. And I would stand by and watch them load some coal and see that they did it safely." Although respondent's witnesses contradicted the length of time petitioner spent in the mines, the ALJ found that petitioner's duties exposed him to coal dust on a "regular and continuous" basis. Further, petitioner testified, without contradiction, that he could walk no more than the shortest of distances--a block or less on level ground--and he could not perform climbing or carrying tasks.
 
 
 42
 Such evidence is merely a catalog of tasks petitioner was required to perform. It is not a proper evaluation of the physical exertion required to perform those tasks or of the impact petitioner's pneumoconiosis would have on his ability to perform the tasks. Thus, the ALJ's conclusion, based on the physicians' opinions, that petitioner "has coal workers' pneumoconiosis to a non-disabling degree ..." was unresponsive to the precise issue before the ALJ: whether petitioner could meet the exertional demands and physical requirements of his usual coal mine employment or comparable and gainful work.
 
 
 43
 The incompleteness of the examining physician's report, particularly the dearth of objective evidence of the exertional demands and health requirements of petitioner's coal mine work, left her, the reviewing physicians, and the ALJ without a reasoned, documented, medical opinion or other substantial evidence upon which she or the others could, consistent with the regulatory requirements, evaluate the miner's disability.
 
 
 44
 Consequently, there is no substantial evidence for a finding and conclusion that the presumption of total disability has been rebutted under 20 C.F.R. Sec. 727.203(b)(2) (1987), and the BRB's decision and order affirming the ALJ's denial of benefits must be reversed.
 
 
 45
 The third rebuttal-related inquiry for the ALJ was whether petitioner's disability arose out of coal mine employment. 20 C.F.R. Sec. 727.203(b)(3) (1987). The ALJ simply concluded that "since disability has not been found, there is no issue whether disability arose out of coal mine employment." This was error. Disability was found--it was legally presumed once the ALJ accepted the positive X-ray readings as evidence petitioner had pneumoconiosis. The regulations clearly state that
 
 
 46
 A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... if one of the following conditions is met:
 
 
 47
 (1) A chest roentgenogram (X-ray) ... establishes the existence of pneumoconiosis....
 
 
 48
 20 C.F.R. Sec. 727.203(a) (1987).
 
 
 49
 Our review of the record discloses insufficient evidence to rebut the presumption under Sec. 727.203(b)(3). Accordingly, we need not remand this case for a determination whether the presumption of disability might be found rebutted. Cf. Adkins v. U.S. Department of Labor, Office of Workers' Compensation Programs, 824 F.2d 287 (4th Cir.1987).
 
 
 50
 Finally, the ALJ was required to consider whether the interim presumption was rebutted by evidence establishing that petitioner did not have pneumoconiosis. 20 C.F.R. Sec. 727.203(b)(4). Since the respondent conceded that petitioner had the disease, the ALJ properly concluded that rebuttal under this provision was not available.
 
 IV.
 
 51
 In conclusion, pursuant to Sykes v. Director, Office of Workers' Compensation Programs, 812 F.2d 890 (4th Cir.1987), we reverse the BRB's affirmance of the ALJ's decision and order and remand this case to the Board for an award of benefits. We also find that the facts and legal arguments are adequately presented in the parties' briefs and joint appendix and that the decisional process would not be significantly aided by oral argument. Accordingly, we dispense with oral argument pursuant to Fed.R.App.P. 34(a) and Loc.R. 34(a).
 
 
 52
 REVERSED AND REMANDED.
 
 
 
 [1]
 A "B" reader is a physician who has taken and passed a specially designed X-ray evaluation proficiency examination given by or on behalf of the Appalachian Laboratory for Occupational Safety and Health or the National Institute for Occupational Safety and Health. The interpretative opinion of a "B" reader may be accorded greater weight by a factfinder than the opinion of a reader not certified at the "B" level. 20 C.F.R. Sec. 718.202 (1987)
 
 
 [2]
 I.e., test results not meeting the regulatory minima for invoking the presumption of total disability arising from work-related pneumoconiosis. See 20 C.F.R. Sec. 727.203(a) (1987)