**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLINCHFIELD COAL COMPANY,
<u>Petitioner,</u>

v.

HENRY PHIPPS, deceased, by Arthell

Phipps, widow; DIRECTOR, OFFICE  OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
<u>Respondents.</u>

No. 98-1149

On Petition for Review of an Order
of the Benefits Review Board.
(97-443-BLA)

Submitted: October 20, 1998

Decided: November 9, 1998

Before WILKINSON, Chief Judge, HAMILTON, Circuit Judge,
and HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Timothy W. Gresham, PENN, STUART & ESKRIDGE, Abingdon,
Virginia, for Petitioner. Joseph E. Wolfe, Vernon M. Williams,
Bobby S. Belcher, Jr., WOLFE & FARMER, Norton, Virginia, for
Respondent Phipps. Marvin Krislov, Deputy Solicitor for National

Operations, Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, Rita A. Roppolo, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Clinchfield Coal Company ("employer") petitions for review of a decision of the Benefits Review Board ("Board") affirming an administrative law judge's ("ALJ") decision awarding black lung benefits to Arthell Phipps ("claimant"), the widow of Henry Phipps. This case has an extensive procedural history. The miner filed a claim on March 27, 1978. The miner died in October 1983, before ALJ Guill held the first hearing on his claim in May 1984. ALJ Guill issued a decision denying benefits in August 1984. He found the autopsy evidence of record sufficient to establish pneumoconiosis and invoke the interim presumption of entitlement to benefits pursuant to 20 C.F.R. § 727.203(a)(1) (1998), but also found that presumption rebutted under § 727.203(b)(2) (1998), based on his finding that employer's evidence proved that the miner was not totally disabled from a respiratory standpoint.

Claimant appealed the miner's claim to the Board and, while that claim was pending, also filed a survivor's claim with the Department of Labor in 1983. In May 1988, the Board reversed the ALJ's finding of subsection (b)(2) rebuttal, both because his finding was in conflict with this Court's decision in Sykes v. Director, Office of Workers' Compensation Programs, 812 F.2d 890 (4th Cir. 1987), and because, in the Board's view, the fact that the miner was deceased at the time of the hearing precluded the employer from showing that the miner was able to do his usual work or comparable work, as required by

2

subsection (b)(2). The Board remanded, however, for consideration of whether the evidence of record could establish subsection (b)(3) rebuttal, which the ALJ had not considered. In August 1988, ALJ Kerr issued a decision denying claimant's survivor's claim because there was no dispute that the miner died of a self-inflicted gunshot wound to the chest, and the statute and regulations preclude an award of survivor's benefits on claims filed after January 1982 where the miner's death is attributable to traumatic injury.

In his first decision on remand, ALJ Guill found that intervening decisions of this Court and the Supreme Court subsequent to the Board's remand mandated that he reconsider the miner's claim under 20 C.F.R. § 410.490 (1998), rather than under subsection (b)(3) of Part 727. See Pittston Coal Company Group v. Sebben, 109 S.Ct. 414 (1988); Broyles v. Director, Office of Workers' Compensation Programs, 824 F.2d 327 (4th Cir. 1987). Accordingly, he found that his previous findings that the autopsy evidence established invocation under subsection (a)(1) of § 727.203 similarly invoked the interim presumption at § 410.490 pursuant to § 410.490(b)(1)(i). Finding that § 410.490's provision for rebuttal in cases where the miner is able to do his usual or comparable work, see § 410.490(c)(2) (1998), could be distinguished from the similar provisions of subsection (b)(2) under section 727.203, the ALJ concluded that his previous finding that the evidence established that the miner was not disabled from a respiratory standpoint was sufficient to establish rebuttal. Accordingly, he again denied benefits.

The Board considered this case for the second time in 1993. The Board consolidated the miner's and survivor's claims for review. It affirmed the denial of the survivor's claim, but again remanded the miner's claim for further consideration. The Board held that in light of the Supreme Court's decision in Pauley v. Bethenergy Mines, Inc., 111 S.Ct. 2524 (1991), it was clear that miners such as Phipps who received full review of their claims under Part 727 were not entitled to further consideration under § 410.490. The Board therefore again remanded the claim for weighing of the evidence under § 727.203(b)(3). Claimant filed an interlocutory appeal from this decision, which we dismissed in 1994.

In his third consideration of the miner's claim, ALJ Guill found that under this Court's decision in Grigg v. Director, Office of Work-

3

ers' Compensation Programs, 28 F.3d 416 (4th Cir. 1994), employer could establish rebuttal under subsection (b)(3) in any one of three ways: (1) by showing that the miner had no respiratory or pulmonary impairment whatsoever; (2) by ruling out a causal relationship between the miner's coal mine employment and his respiratory impairment; or (3) by ruling out the possibility that the miner's respiratory or pulmonary impairment played any role in his total disability. Any of these showings, in the ALJ's view, could satisfy subsection (b)(3)'s requirement that the party opposing entitlement prove that the miner's total disability or death did not arise even in part out of coal mine employment. See § 727.203(b)(3). After evaluating the medical evidence, however, the ALJ concluded that employer could make none of these showings and therefore awarded benefits.

Employer appealed to the Board, arguing that the Board previously erred by finding subsection (b)(2) rebuttal unavailable in light of the miner's death, and that the ALJ improperly rejected Dr. Byers' opinion in finding that employer failed to establish subsection (b)(3) rebuttal. The Board did not retreat from its prior holding that the miner's death, alone, precluded subsection (b)(2), but clarified that, in the alternative, the evidence was insufficient as a matter of law under Sykes to establish subsection (b)(2) rebuttal in any event. The Board further found that the ALJ provided proper reasons for rejecting Dr. Byers' opinion and, accordingly, affirmed the award of benefits.

On appeal, employer first contends that the Board erred by finding subsection (b)(2) rebuttal unavailable as a matter of law because the miner died prior to the hearing. We need not resolve this question, however, because we affirm the Board's finding that, under our decision in Sykes, the evidence was insufficient to establish subsection (b)(2) rebuttal as a matter of law. Employer does not dispute the Board's findings on this issue. It could not successfully do so, because Sykes requires, for a showing of subsection (b)(2) rebuttal, that the party opposing entitlement prove that the miner is not disabled for whatever reason. See Sykes, 812 F.2d at 893-94. In this case, none of the physicians of record addressed whether the miner was disabled for whatever reason.

Employer further contends, however, that because Sykes established a new standard for subsection (b)(2) rebuttal, considerations of

4

due process and fundamental fairness require that the ALJ be directed to reopen the record and permit employer to present new evidence tailored to the new standard. We disagree. The Sykes decision rejected the Board's position that subsection (b)(2) rebuttal could be established by showing that the miner was not totally disabled from a respiratory or pulmonary standpoint. Our opinion explained that the cause of a miner's disability is not part of subsection (b)(2) rebuttal analysis. Rather, the cause of the miner's disability is relevant under subsection (b)(3), which permits rebuttal where it is shown that the miner's total disability did not arise out of coal mine employment. Id. at 894.

Our decision, however, did not "change" the applicable standard. In fact, the Sykes decision states that the Board's interpretation of the regulation "is belied by the language of the regulation." Id. at 893. The regulation has always stated that in order to establish (b)(2) rebuttal, the party opposing entitlement must show"that the individual is able to do his usual coal mine work or comparable and gainful work." See 20 C.F.R. § 727.203(b)(2) (1998). This language put all relevant parties on notice that it could establish rebuttal by proving that the miner was not disabled. The existence of Board decisions preceding Sykes holding that a lesser showing, i.e., a showing of no respiratory or pulmonary disability, would suffice to establish rebuttal, does not alter this fact. Hence, employer cannot claim that it was prevented from presenting subsection (b)(2) rebuttal evidence; it simply chose not to do so. The fact that it may now regret that decision provides no basis for reopening the record.

Employer further asserts that the Board's finding that subsection (b)(2) rebuttal was unavailable due to the miner's death, coupled with our decision in Grigg v. Director, Office of Workers' Compensation Programs, 28 F.3d 416 (4th Cir. 1994), effectively renders the presumption irrebuttable in this case. We have already explained that employer's evidence was insufficient as a matter of law to establish subsection (b)(2) rebuttal. Regarding subsection (b)(3), the record contains evidence which, if credited, could have established rebuttal under our decision in Grigg.

Subsection (b)(3) permits establishment of rebuttal through evidence establishing "that the total disability or death of the miner did

5

not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). This language has long been held to require the respondent to "rule out" the causal relationship between the miner's presumed total disability and his coal mine employment. See Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir. 1984). In Grigg, we approved of Board law holding that medical evidence showing that the miner has no respiratory or pulmonary impairment is sufficient to meet this standard. We cautioned, however, that such evidence could not rebut invocation under subsection (a)(1) (which requires a showing of pneumoconiosis) if the physician's opinion was premised on the erroneous finding that the miner did not have pneumoconiosis. See Grigg, 28 F.3d at 419-20.

Employer avers that our holding in Grigg thwarted its ability to establish subsection (b)(3) rebuttal because its physicians did not diagnose pneumoconiosis. It asserts that it is unfair to apply Grigg to this case because the miner's pneumoconiosis was not detectable until his autopsy results were available. Employer's problem is really with its own evidence, rather than with the applicable standard. As discussed, the ALJ noted three ways, consistent with Grigg, that employer could have established subsection (b)(3) rebuttal. Employer's evidence was simply insufficient to establish (b)(3) rebuttal under any of these avenues. Moreover, some of employer's evidence was collected after the miner's autopsy.

Contrary to employer's contention, a respondent is not automatically precluded from establishing (b)(3) rebuttal whenever the ALJ finds invocation under (a)(1) and the opinions on which employer must rely to establish (b)(3) rebuttal find no pneumoconiosis. We have acknowledged that the rule announced in Grigg should not be mechanically applied, because there are situations where a physician's findings regarding the cause or existence of impairment may not be premised on his view that the miner does not have pneumoconiosis. See Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193-94 (4th Cir. 1995).

In this case, the only medical opinion which tended to affirmatively sever any connection between disability and coal mine employment was offered by Dr. Byers, who found the absence of any respiratory or pulmonary impairment. The ALJ, relying on Grigg, discounted his opinion, in part, because Dr. Byers failed to diagnose pneumoconio-

6

sis. Employer could have argued, but did not, that Dr. Byers' finding of no impairment was reached independently of his finding of no pneumoconiosis, and therefore should not have been automatically discredited under Grigg.

Had it done so in this case, however, its efforts would have been unavailing because the ALJ also properly rejected Dr. Byers' report on proper alternative grounds. The ALJ noted that the evidence of record, including evidence gathered before the miner's death, demonstrated the existence of chronic bronchitis and emphysema in addition to the evidence of pneumoconiosis. The ALJ found that Dr. Byers' failure to diagnose any of these respiratory diseases, all of which could have caused respiratory impairment, casted doubt upon his finding that the miner had absolutely no impairment. The ALJ rationally reasoned that had Dr. Byers diagnosed any of these conditions, he might have validated the miner's subjective complaints and found the existence of some impairment.

We therefore conclude that the application of Grigg to this case in no way rendered the (a)(1) presumption irrebuttable in violation of employer's due process rights or the mandate of the regulations that all relevant evidence be considered at the rebuttal stage. See 20 C.F.R. § 727.203(b)(1998). Moreover, the ALJ provided rational reasons, aside from his reliance on Grigg, to reject the only report employer submitted which could have arguably established subsection (b)(3) rebuttal. In view of our observation that the application of Grigg was not critical to the disposition of this case, we reject employer's contention that the record must be reopened for the submission of new evidence in light of the allegedly "new" standard for (b)(3) announced by Grigg. We note, however, that Grigg , even more clearly than Sykes, did not "change" the law, but merely confirmed an existing principle of Board law and recognized the fallacy of crediting a physician's opinion where that opinion is premised on an assumption that is contrary to a fact as determined by the ALJ.

Accordingly, the decision of the Board is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7